CHARLES REINHART COMPANY v WINIEMKO

Docket Nos. 94990, 94991. Argued October 6, 1993 (Calendar No. 7). Decided March 1, 1994.

The Charles Reinhart Company brought a legal malpractice action in the Washtenaw Circuit Court against Ronald C. Winiemko, alleging that but for his negligence it would have succeeded in its appeal of certain litigation. The court, Melinda Morris, J., entered judgment on a jury verdict for the plaintiff, finding that the appeal would have succeeded. The Court of Appeals, SULLIVAN, P.J., and WAHLS and J. W. FITZGERALD, JJ., affirmed, ruling that proximate cause in a legal malpractice action is a question of fact and that, even in an action alleging malpractice in handling an appeal, issues that were questions of law in the underlying case become questions of fact in the malpractice action. The Court held that the question for the trier of fact is whether a reasonable appellate court, more likely than not, would have granted the appellant in the underlying case some relief (Docket Nos. 126230, 128542). The defendant appeals.

In an opinion by Justice RILEY, joined by Justices GRIFFIN and MALLETT, and an opinion by Chief Justice CAVANAGH, the Supreme Court *held:*

The trial court, and not the jury, in an action alleging attorney malpractice in handling an appeal is to determine whether the underlying appeal would have been successful. Such a determination intrinsically involves issues of law within the exclusive province of the judiciary.

1. A plaintiff in an action for legal malpractice must prove the existence of an attorney-client relationship, negligence in the legal representation that was a proximate cause of an injury, and the fact and extent of the alleged injury. Where malpractice in handling an appeal is alleged, two further aspects of causation in fact must be proved: that the attorney's negligence caused the loss or unfavorable result of the appeal,

REFERENCES

Am Jur 2d, Attorneys at Law § 224.
See ALR Index under Attorneys at Law.

and that the loss or unfavorable result in turn caused a loss or unfavorable result in the underlying litigation.

2. Whether an appeal lost because of an attorney's negligence would have succeeded if properly pursued is an issue for the Court because the resolution of the underlying appeal originally would have rested on a decision of law. It is the province of the court to determine the law, regardless of its procedural posture in any given case. Rulings of law may be reviewed de novo. Unlike findings of fact, legal issues are not resolved in the light of conflicting probabilities. The outcome of appellate cases is decided on the basis of predetermined principles of law. Unlike a trial court's rulings of law that may be reviewed de novo, a jury's verdict generally only may be reversed pursuant to the standards of summary disposition or judgment notwithstanding the verdict. Juries traditionally do not decide the law or the outcome of legal conflicts. They are not appellate courts, but must remain factfinders, determining what, how, and when something happened, but not resolving the law itself. The determination of questions of law by the courts is not a new elitist prerogative; to the contrary, it is a vindication of the existence of the judiciary, the very purpose of the judiciary.

3. In this case the issue of proximate cause is reserved to the court because whether an appeal would have been successful intrinsically involves issues of law within the exclusive province of the courts. Because the trial court did not address the issue whether the underlying suit would have been successful as a matter of law, its ruling must be reversed.

4. At no time has the right to a trial by jury, as protected under Michigan law, in any fashion been understood to displace the authority and duty of the judiciary to determine legal issues. For as long as the right has been recognized, the exclusive province of the Court to rule on matters of law has been acknowledged. Hence, the right to a jury trial is in no manner infringed when the court proceeds to evaluate the legal merits of an underlying appeal in a legal malpractice action alleging negligence in the pursuit of the appeal.

Justice RILEY, joined by Justices GRIFFIN and MALLETT, additionally stated that issues of law are resolved by a reasoned application of neutral principles to a particular factual situation. That the resolution of a particular case may not appear obvious at the outset of litigation or an appeal does not belie the notion that a neutral and principled application of legal authority will result in one principled result. While ambiguities within the law exist, they are resolved not by the predilections

of individual judges, but by a reasoned application of legal principles. That dissents and conflicting opinions exist within the same legal system reveal only that some members of the judiciary disagree over the application or interpretation of guiding principles, not that a correct result is not achievable, or has not been achieved.

The plaintiff's view, that appellate courts will differ in their application of the law and that, thus, no correct answer to legal issues exists, invites denigration of the rule of law. Any suggestion that the Supreme Court or others might deviate from a pure application of the law and its guiding principles is unwarranted and contrary to the fundamental principles of adjudication. The law is distinguished from other forms of public or authoritative decision making not by its heavy use of outcome-determining rules laid down in advance, but by the use of procedures designed to ensure that legal decision making is not merely the ad hoc imposition of personal will or the practice of politics.

Chief Justice CAVANAGH, concurring, stated that to the extent that an underlying appeal involves an issue of law, decision making regarding the likely success of that appeal should be reserved to the court, not the jury. The majority's discourse on the rule of law and the process of legal decision making is unnecessary to the holding of this case.

Justice BOYLE, concurring in the result, stated that the issue in this case is how an appeal would have been decided had it been timely filed. The best way to determine that is by framing the question as one of law.

Reversed and remanded.

Justice BRICKLEY, joined by Justice LEVIN, dissenting, stated that a determination of causation in cases of appellate malpractice is a question of fact to be resolved by the jury, not a question of law to be decided by a trial judge.

A prima facie case of appellate malpractice requires that a plaintiff establish that the defendant's negligence was a proximate cause of the plaintiff's injury. Proximate cause is an issue of law appropriately determined as a preliminary matter by the trial judge, while cause in fact questions are issues of fact that must be decided by the factfinder. The trial court in this case properly determined that the plaintiff had established a prima facie case. It was then within the exclusive province of the jury to determine whether the defendant's actions were particular causes in fact that resulted in the plaintiff's injury.

196 Mich App 110; 492 NW2d 505 (1992) reversed.

Attorney and Client — Malpractice on Appeal — Underlying
    Litigation — Questions of Law.

The trial court, and not the jury, in an action alleging attorney
    malpractice in handling an appeal is to determine whether the
    underlying appeal would have been successful; such a determi-
    nation intrinsically involves issues of law within the exclusive
    province of the judiciary.

*Davis & Fajen, P.C.* (by *Peter A. Davis* and
*Nelson P. Miller*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani*
and *Mary Massaron Ross*), for the defendant.

Amici Curiae:

*Dickinson, Wright, Moon, Van Dusen & Free-
man* (by *Robert W. Powell*) for Michigan Defense
Trial Counsel.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by
*Noreen L. Slank*), for Michigan Lawyers Mutual.

RILEY, J. At issue in the instant case is whether
proximate cause in a legal malpractice action
alleging negligence during an appeal is an issue of
law reserved for the court or an issue of fact
reserved for the jury. More specifically, we are
presented with the question whether a court or a
jury should determine whether the underlying
appeal would have been successful. We hold that
the issue is reserved to the court because whether
an appeal would have been successful intrinsically
involves issues of law within the exclusive prov-
ince of the judiciary. Furthermore, we find that
the trial court failed to resolve the issue as a
matter of law, and that a determination of the
issue by a court does not deprive a litigant of the

right to trial by jury. Thus, we reverse the decision of the Court of Appeals and remand the case to the trial court for proceedings in accordance with this opinion.

I

Dr. and Mrs. William Kauffman brought suit against plaintiff The Charles Reinhart Company,[1] a real estate firm located in Washtenaw County, Michigan. The Kauffmans alleged that plaintiff had improperly altered an instrument conveying real estate that they had purchased by reserving a previously undisclosed utility easement. In July 1983, the jury found that plaintiff defrauded the Kauffmans and awarded $70,000 in damages. The jury also found that plaintiff negligently conveyed the property and awarded an additional $30,000 in damages.[2]

Plaintiff's corporate counsel, deciding to proceed with another attorney on appeal, retained Ronald C. Winiemko as counsel. In September 1983, they discussed the case and determined that the appeal would focus on the claim that the jury awards for both fraud and negligence were cumulative. Although Winiemko timely filed an appeal, he failed to timely file his brief and formally answer his adversary's motion for dismissal.[3] Accordingly, the Court of Appeals dismissed the appeal. Winiemko also failed to timely file a motion for rehearing

[1] At the time of their initial dealings with the Kauffmans, The Charles Reinhart Company was known as The Caldwell & Reinhart Company.

[2] Although the jury also found that plaintiff had breached its contract with the Kauffmans, it awarded no damages on that count.

[3] Winiemko, through correspondence to the Kauffmans' attorney, disputed the deadline for filing his brief. Yet, not only did he fail to formally respond to the motion for dismissal, he also failed to meet his own computed deadline.

pursuant to MCR 7.215(H).[4] Furthermore, he failed to respond to repeated requests of plaintiff's corporate counsel to inform him of the progress of the appeal.

Thus, in September 1987, plaintiff filed the instant action against Winiemko and his law firm, Bell, Hertler & Winiemko, P.C., averring that Winiemko had committed professional malpractice by, inter alia, irretrievably losing plaintiff's right to appeal. Plaintiff alleged that but for Winiemko's negligence, plaintiff would have succeeded in its appeal of the underlying litigation. Furthermore, plaintiff alleged that it was denied the opportunity to negotiate a more favorable settlement,[5] and was confronted with a license revocation proceeding begun by the Kauffmans.[6]

Winiemko filed several motions for summary disposition pursuant to MCR 2.116(C)(8) and (10), contending that plaintiff did not present a prima facie case because no proximate cause could be proven; Winiemko argued that the underlying appeal, as a matter of law, could not have succeeded.[7] Winiemko posited that because the trial attorney had not objected to the pertinent jury instructions, the appeal could not have prevailed, and that in any event the tactics utilized by the trial attorney foreclosed any possibility of a successful appeal.

[4] Winiemko eventually submitted a motion for reinstatement of appeal, but the Court of Appeals considered the motion as a delayed motion for rehearing and rejected it.

[5] Because it was not argued before this Court, we do not address whether the alleged damages arising from the opportunity to negotiate a more favorable settlement are to be decided by a court as a matter of law or by the factfinder.

[6] Dr. Kauffman filed two related administrative complaints seeking the termination of plaintiff's license on the basis of fraud. Plaintiff settled those matters for $38,000.

[7] Defendant filed a motion for summary disposition before trial, a motion for a directed verdict after plaintiff's opening statement, a motion for summary disposition after plaintiff rested, and a motion for summary disposition after he rested.

Finding the question a jury issue, the trial court denied Winiemko's motions and permitted plaintiff's legal experts to testify that the appeal would have succeeded. The jury found Winiemko guilty of professional malpractice and breach of contract, and awarded damages.

The Court of Appeals affirmed.[8] It ruled that proximate cause in a legal malpractice suit is a question of fact,[9] and found that even in an appellate malpractice action "issues that were questions of law in the underlying case . . . become questions of fact" in the malpractice action.[10] Thus, the Court held that "[i]n a case charging appellate malpractice, the question for the trier of fact is whether a reasonable appellate court would, more likely than not, have granted the appellant in the underlying case some relief."[11]

This Court granted leave to appeal on June 10, 1993.[12]

## II

### A

A unanimous opinion of this Court recently defined the elements of a legal malpractice action in Michigan:

(1) the existence of an attorney-client relationship;
(2) negligence in the legal representation of the plaintiff;
(3) that the negligence was a proximate cause of an injury; and

---

[8] 196 Mich App 110; 492 NW2d 505 (1992).
[9] *Id.* at 113-114.
[10] *Id.* at 115.
[11] *Id.*
[12] 442 Mich 925.

(4) the fact and extent of the injury alleged.
[*Coleman v Gurwin,* 443 Mich 59, 63; 503 NW2d
435 (1993).]

As in other tort actions, the plaintiff has the
burden of proving all the elements of the suit to
prevail. *Id.*

Often the most troublesome element of a legal
malpractice action is proximate cause. As in any
tort action, to prove proximate cause a plaintiff in
a legal malpractice action must establish that the
defendant's action was a cause in fact of the
claimed injury.[13] Hence, a plaintiff "must show
that *but for* the attorney's alleged malpractice, he
would have been successful in the underlying
suit." *Id.* (emphasis added).[14] In other words,
" ' "the client seeking recovery from his attorney
is faced with the difficult task of proving two cases
within a single proceeding." ' " *Id.* at 64, quoting
*Basic Food Industries, Inc v Grant,* 107 Mich App
685, 691; 310 NW2d 26 (1981), quoting 45 ALR2d
5, § 2, p 10. To hold otherwise would permit a jury

_____

[13] Causation in fact is one aspect of, and distinguishable from,
legal or proximate cause. *Moning v Alfono,* 400 Mich 425, 438-
439; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977),
supplemental order 402 Mich 958 (1978). The question of fact as
to whether the defendant's conduct was a cause of the
plaintiff's injury must be separated from the question as to
whether the defendant should be legally responsible for the
plaintiff's injury. Prosser & Keeton, Torts (5th ed), § 42, pp 272-
273, 279. Legal cause is often stated in terms of foreseeability.
See *McMillan v State Highway Comm,* 426 Mich 46, 61-62; 393
NW2d 332 (1986). [*Richards v Pierce,* 162 Mich App 308, 316-
317; 412 NW2d 725 (1987).]

[14] Defendants argue that cause in fact is proven if a plaintiff can
show that the attorney acted negligently and that his negligence
resulted in the dismissal of the appeal, but that proximate cause may
only be proven if the trial court rules that the appeal would have
been successful. Yet, the question is more appropriately considered an
issue of cause in fact because no causation in fact occurred if the
underlying appeal would have failed. In any event, whether the issue
is categorized as an issue of cause in fact or proximate, i.e., legal
causation, is irrelevant to the resolution of the instant case.

to find a defendant liable on the basis of specula-
tion and conjecture. 443 Mich 65.[15] Although the
"suit within a suit" concept is not universally
applicable, it applies where the alleged negligent
conduct involves the failure of an attorney to
properly pursue an appeal. *Id.*[16]

[15] Thus, essential to the determination of proximate cause in a legal
malpractice action is the plaintiff's ability to show that the appellate
court even would have addressed the issue:

> Specifically, the plaintiff must show that an appellate court
> would have had jurisdiction to hear the appeal, that the appel-
> late court would have granted review when review is discre-
> tionary, and that the trial court's judgment would have been
> modified on review. [Comment, *Attorney malpractice: Problems
> associated with failure-to-appeal cases,* 31 Buffalo L R 583, 589
> (1982).]

See also 2 Mallen & Smith, Legal Malpractice (3d ed), § 24.39, p 538
("If the appellate court does not grant review as a matter of right but
only upon petition, the plaintiff must persuade the trial judge that
the issue involved was of sufficient public importance or that the
error was so apparent and significant that the appellate court would
have granted a hearing").

[16] Plaintiff has suggested that because Winiemko originally agreed
to file the appeal and would have represented to the Court of Appeals
that the appeal possessed merit, he should be precluded from arguing
that the appeal would have failed.

As at least one court has noted,

> [t]he apparent irony, however, is that the attorney now at-
> tempts to show that his previous client's appeal would have
> failed even though he may have accepted the duty of pursuing
> it. This, though, is the practice of law, where competent people
> have different views on the same subject. [*Jablonski v Higgins,*
> 6 Ohio Misc 2d 8, 11; 453 NE2d 1296 (1983).]

As long as Winiemko fulfilled his ethical obligations by determining
the merits of the appeal, he may not be punished in this suit for his
advocacy. After all, every suit has one victorious and one vanquished
party. Yet, we do not punish the losing attorneys with ethical viola-
tions for failing to bring meritorious suits. Indeed, if this Court
adopted the suggestion of plaintiff, a strong freezing wind would
sweep through the judicial system: attorneys would rightfully fear
pursuing novel, complicated, or difficult cases to avoid being haunted
by their advocacy in subsequent attorney malpractice actions. Yet,
the Michigan Rules of Professional Conduct were intended to permit
just such advocacy: "A lawyer may offer a good-faith argument for an
extension, modification, or reversal of existing law." MRPC 3.1. To

In a legal malpractice action alleging negligence in an appeal a plaintiff must prove two aspects of causation in fact: whether the attorney's negligence caused the loss or unfavorable result of the appeal, and whether the loss or unfavorable result of the appeal in turn caused a loss or unfavorable result in the underlying litigation. 2 Mallen & Smith, Legal Malpractice (3d ed), § 24.39, p 538.[17] Whether the court as a matter of law or the jury as an issue of fact determines these aspects of proximate cause is the issue in the instant case.[18]

B

Plaintiff urges this Court to affirm the Court of Appeals by holding that whether an appeal would have been successful is an issue of fact for the jury in a legal malpractice case because cause in fact is an issue for the jury in other professional malpractice cases. Plaintiff suggests that to hold otherwise would simply be an elitist ruling by this Court to protect attorneys from the rigors of the jury system. Defendants, on the other hand, suggest that the trial court is vested with the exclusive authority to determine the threshold issue whether the underlying appeal possessed legal merit as a component of proximate cause because the issue is inherently one of law.[19]

ensure that these ideals are pursued, we must permit Winiemko to posit his full defense.

[17] See also, e.g., *Rosebud Mining & Mill Co v Hughes,* 21 Colo App 247; 121 P 674 (1912); *Better Homes, Inc v Rodgers,* 195 F Supp 93 (ND W Va, 1961).

[18] Whether Winiemko's negligence caused the loss of the appeal is not contested because defendants admit that Winiemko failed to timely file his brief and his omission led to the dismissal of the appeal.

[19] The parties cite *Cornelissen v Ort,* 132 Mich 294; 93 NW 617 (1903), as dispositive of this case in their favor. A careful reading of the case, however, reveals that it possesses little if any authority for

"Since the basic premise of trying the under-lying action is to prove what the result should have been, the guiding principle in identifying issues of law and fact is to utilize the same classifications as should have been applied in the under-lying case." 2 Mallen & Smith, *supra,* § 27.10, p 652.[20] Thus, whether an appeal lost because of an attorney's negligence would have succeeded if properly pursued is an issue for the court because the resolution of the underlying appeal originally would have rested on a decision of law. See, e.g., *Chocktoot v Smith,* 280 Or 567, 574-575; 571 P2d 1255 (1977). With rare exception, appeals are based on and resolved as matters of law, not fact.[21] *Demill v Moffat,* 45 Mich 410; 8 NW 79 (1881); *Keiser v Enterprise Foundry Co,* 357 Mich 159; 97 NW2d 737 (1959). Thus, an appellate malpractice action presents an issue of law regarding the success of the underlying appeal within its proxi-mate cause analysis.

The Texas Supreme Court has reasoned:

the issue presented. In *Cornelissen,* the Court addressed a legal malpractice action, similar to the instant case, in which the plaintiff's counsel had failed to timely file an appeal. The Court did not directly address the issue of proximate cause, and focused mostly on who was liable among the plaintiff's three attorneys for the failure to properly file the appeal. The case is, at best, ambiguous regarding the issue at hand, and the few unclear references made to the issue are unpersua-sive obiter dicta.

Although the Court of Appeals in *Whipple v Proctor,* unpublished opinion per curiam of the Court of Appeals, decided May 23, 1989 (Docket No. 102741), addressed the issue in the instant case, it has no persuasive value because it is an unpublished opinion. Thus, the question presented is all but an issue of first impression.

[20] See also *Chocktoot v Smith,* 280 Or 567, 574-575; 571 P2d 1255 (1977).

[21] This case does not involve, nor does the opinion resolve, the issue presented by an action in which an appellate court is empowered to review the facts of a lower tribunal de novo, or other situations in which an appeal would have been resolved upon purely factual determinations. See, e.g., *Chocktoot, supra* at 575 (holding that "[i]f the alleged negligence of an attorney in an earlier case involved both legal and factual elements, it would be necessary for the trial court to separate these elements and to instruct the jury accordingly").

The question of whether an appeal would have been successful depends on an analysis of the law and the procedural rules. [The plaintiff's] petition that the jury should make this determination as a question of fact would require the jury to sit as appellate judges, review the trial record and briefs, and decide whether the trial court committed reversible error. A judge is clearly in a better position to make this determination. Resolving legal issues on appeal is an area exclusively within the province of judges . . . . [*Millhouse v Wiesenthal*, 775 SW2d 626, 628 (Tex, 1989).]

Although juries may often decide the issue of proximate cause in nonappellate malpractice suits,[22] the nature of appellate practice mandates

---

[22] If the malpractice action is not one focused exclusively on the appellate process or issues of law, but is focused on malpractice occurring during litigation or settlement negotiations, then proximate cause often is an issue of fact. Cf. *Ignotov v Reiter*, 425 Mich 391, 399; 390 NW2d 614 (1986) (Levin, J.); *Espinoza v Thomas*, 189 Mich App 110, 124; 472 NW2d 16 (1991).

The Washington Supreme Court has illustrated:

The principles of proof and causation in a legal malpractice action usually do not differ from an ordinary negligence case. . . . For instance, when an attorney makes an error during a trial, the causation issue in the subsequent malpractice action is relatively straightforward. The trial court hearing the malpractice claim merely retries, or tries for the first time, the client's cause of action which the client asserts was lost or compromised by the attorney's negligence, and the trier of fact decides whether the client would have fared better but for such mishandling. . . . In such a case it is appropriate to allow the trier of fact to decide proximate cause. [*Daugert v Pappas*, 104 Wash 2d 254, 257-258; 704 P2d 600 (1985).]

See also *Phillips v Clancy*, 152 Ariz 415, 421; 733 P2d 300 (Ariz App, 1986) ("In trial level malpractice, the attorney's negligence either precluded a trial on the merits, or prevented the client's case from being presented according to professional standards. If the underlying suit would have been tried before a jury, or a judge sitting as a trier of fact, we conclude that the jury in the malpractice case should decide the disputed factual issues pertaining to the original suit"); 2 Mallen & Smith, *supra*, § 27.7, p 643 ("Normally, in a legal malpractice action, the issues of negligence, proximate cause and damage must be decided by the trier of fact based upon the recreated evi-

judicial resolution of the issue. The Washington Supreme Court has explained:

> In cases involving an attorney's alleged failure to perfect an appeal . . . [t]he cause in fact inquiry becomes whether the frustrated client would have been successful if the attorney had timely filed the appeal. . . .
>
> The determination of this issue would normally be within the sole province of the jury. Underlying the broad inquiry, however, are questions bearing legal analysis. The determination of whether review would have been granted and whether the client would have received a more favorable judgment depends on an analysis of the law and the Rules of Appellate Procedure. [*Daugert v Pappas,* 104 Wash 2d 254, 258; 704 P2d 600 (1985).]

The Michigan Constitution exclusively vests the "judicial power" of the state in one court of justice composed of the Supreme Court, the Court of Appeals, and the courts of original jurisdiction. Const 1963, art 6, § 1. In Michigan, the judicial power includes the exclusive power to determine and apply the law. Justice COOLEY has noted:

> "To adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department." [*Johnson v Kramer Bros Freight Lines, Inc,* 357 Mich 254, 258; 98 NW2d 586 (1959), quoting Cooley, Constitutional Limitations (7th ed), p 132.][23]

Chief Justice Marshall of the United States

dence. In a jury trial, the jury is instructed the same as the jury should have been instructed in the underlying action").

[23] See also *Johnson, supra* at 258, quoting 16 CJS, Constitutional Law, § 144, p 687 (the role of the court in our constitutional system is to " 'declare what the law is and to determine the rights of parties conformably thereto' ").

Supreme Court similarly expounded in the landmark case *Marbury v Madison:*

It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each. [*Marbury v Madison,* 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803).][24]

Indeed, "courts will not permit even expert witness testimony on a question of . . . law because it is the exclusive responsibility of the trial judge to find and interpret the applicable law." *People v Lyons,* 93 Mich App 35, 46; 285 NW2d 788 (1979).[25]

Thus, in the instant case, because the issue whether the underlying appeal would have succeeded is resolved by legal principle, the issue is one for the court, not the jury. Simply because issues of law are presented in a unique procedural posture does not eviscerate this basic governing principle of Michigan jurisprudence.[26]

Noting that the field of law is no more complicated than the fields of medicine or engineering and that juries determine causation in professional malpractice cases dealing with those fields, plaintiff contends that issues presented in the instant case are readily resolved by the jury. The dissenting opinion in *Millhouse* concurs:

[24] While Chief Justice Marshall was addressing the federal judiciary, that the powers of Michigan's judiciary in this regard are modeled after the federal judiciary is not questioned.

[25] See also *In re Portus,* 142 Mich App 799, 802; 371 NW2d 871 (1985) ("Experts may not testify as to the meaning of the law or a legal term").

[26] As noted by the dissent, causation in an appellate attorney malpractice action asks *"what the law was."* *Post* at 614. Hence, e.g., if a statute has been modified in the intervening time between the underlying appeal and the malpractice action, the original statutory provisions would apply in the malpractice action.

The field of appellate law is no more complicated
or obscure than the fields of medicine, chemistry,
engineering, biology, construction, or any of a
myriad of professions. In all negligence cases in-
volving these professions, the issue of causation is
submitted to the jury. The rule should be no
different—and no less—for attorneys. Further, to
say that the court is entitled to rule upon the
question of causation as a matter of law in an
appellate legal malpractice case gives the appear-
ance that the bench is in the position of protecting
the bar.

\* \* \*

The privilege of being an attorney should not
carry with it immunity from the jury system. The
argument that attorney-judges are better equipped
to decide appellate legal malpractice cases is
elitist. We do not impanel a jury of physicians to
decide a medical malpractice case. [*Id.* at 628-629.]

Yet, our reasoning is not based on the assump-
tion that a jury is incapable of correctly deciding
an issue of law presented before it through expert
testimony. Issues of extreme complexity, including
intricate matters of medicine and engineering, are
often submitted to juries. Rather, our holding is
based on the premise that the province of the
court in our constitutional system is to determine
the law, regardless of its procedural posture in any
given case. The court makes this legal determina-
tion not only because of any special skills it may
possess, but also because it is a court of law and its
role in the constitutional order and justice system
is to declare what the law is.[27]

Moreover, justice requires that a court decide
the issues of law in the instant case. If the

---

[27] The dissent asserts that "[t]he fact is that law, no matter how
adduced, must be *applied* to fact to reach a determination of causa-
tion. Such an application is unquestionably a task within the province
of a jury." *Post* at 614-615. Yet, summary disposition has always
taken issues of fact and law away from the jury. A party has no right

plaintiff's position is accepted, then errant juries may find a defendant liable on the basis of an incorrect interpretation of the law, and that finding may become immune from effective judicial review. In *Martin v Hall*, 20 Cal App 3d 414, 421-424; 97 Cal Rptr 730 (1971), for instance, the plaintiff filed a legal malpractice action against an attorney who was retained to defend him in a criminal action. The jury found that the attorney should have argued the issue of double jeopardy and awarded the plaintiff damages. The Court of Appeals reversed, as a matter of law, some of the jury's findings because they were inconsistent with the state of the law—in other words, the jury had erroneously concluded that the Double Jeopardy Clause would have precluded some of the criminal convictions. If that court had accepted the plaintiff's suggestions, then the defendant would have been subjected to liability because of erroneous legal reasoning. Furthermore, the jury's verdict, as findings of fact, would be subject to stricter standards of review that would effectively limit an appellate court's ability to reverse a jury's errant findings. Unlike a trial court's rulings of law that

to reach a jury if he fails to meet the standards of summary disposition. Hence, because the issue of causation may be resolved on summary disposition in attorney appellate malpractice actions, the issue need not reach a jury. Furthermore, this finding does not "carve out an exception—for attorneys only—from the jury system." *Post* at 622. Every professional malpractice case—indeed, every case brought before any court—must overcome the hurdle of summary disposition before it may reach a jury.

Nor does permitting a trial court to resolve issues of causation in any manner reduce such cases to those not involving an actual controversy. In the instant case, there exists " 'a genuine, live controversy between interested persons asserting adverse claims . . . .' " *Post* at 616. See *Shavers v Attorney General*, 402 Mich 554, 589; 267 NW2d 72 (1978). After all, a plaintiff and a defendant are presenting contrary claims in an ongoing attorney malpractice action. Whether "*the underlying appeal itself . . . involve[s]* a 'genuine, live controversy,' " *post* at 617 (emphasis added), is not the issue, but whether *this* case involves a genuine and live controversy. Clearly it does.

may be reviewed de novo, a jury's verdict generally only may be reversed pursuant to the standards of summary disposition[28] or judgment notwithstanding the verdict.[29]

Furthermore, the analogy to medical and engineering cases is inapposite. If the "laws of science" dictate a particular result with which reasonable persons may not disagree, then summary disposition is appropriate—only when scientific probabilities conflict does the jury resolve an issue.[30] Unlike medicine or science, however, legal issues are not resolved by conflicting probabilities. The law is more akin to mathematics: only one result exists, it need only be deduced. After all, when an appellate court binds the jurisprudence of the state by resolving a legal issue, it has deduced that answer. Contrary to the dissent's assertions, there are no conflicting probabilities, and no guesswork. Hence, summary disposition regarding a legal issue is always appropriate because no clash of scientific probabilities exists. Causation in a medical or accounting malpractice action is usually an issue of fact because there is no predetermined rule discoverable by man that determines causation in such cases. The dissent suggests that in the instant case, whether the appeal would have been successful is unknown. Indeed, the dissent admits that under its holding, "the jury is simply guessing what principle of law might have been applied by the appellate court." *Post* at 618. Guesswork, however, is simply not the correct method to determine the legal consequences of an attorney's failure to perfect an appeal. The outcome of appellate cases is decided on the basis of predetermined

---

[28] MCR 2.116(C)(8) and (10).

[29] MCR 2.610.

[30] Where reasonable minds can reach only one result, causation is a question of law. *Nabkey v Jack Loeks Enterprises, Inc,* 376 Mich 397, 400; 137 NW2d 132 (1965); *Accetola v Hood,* 7 Mich App 83, 89; 151 NW2d 210 (1967); 2 Mallen & Smith, *supra,* § 27.10, p 652.

principles of law.[31] There simply is no disputed issue of fact for a jury to decide with respect to how a legal issue would have been decided on appeal. In other words, a jury is not permitted to decide causation on the basis of a finding that the appellate court would have decided the legal issues incorrectly.

The Oregon Supreme Court elaborated regarding this very issue:

There is a famous view that prediction, or, as Justice Holmes put it, "[t]he prophecies of what the courts will do in fact," is all that is meant by law. Such a view of law might imply that the probable legal ruling in the earlier case, being only a prediction of what the court would have done in fact, should be left to the jury's belief in the competing prophecies of counsel and expert witnesses. Or it might imply that the task of predicting this ruling, being "law" by definition, belongs to the court in the malpractice case. But we do not believe that the issue of causation in the malpractice case is the retrospective prediction of the actual behavior of a court on an issue of law, any more than that of a factfinder of an issue of fact. The object in the second trial is not to reconstruct what [the trial court] would actually have done, or what the judges of the Court of Appeals would actually have done on appeal. Rather, with respect to an issue of law in the earlier case, the issue in the malpractice case is what the outcome *should* have been if the issue had been properly presented, under the law as it was at the time or

---

[31] The source of law in Michigan is derived from the Michigan and federal Constitutions, Michigan and federal statutes, and the common law. This does not mean, however, that those principles are immutable. The law alters daily: new case law, statutory additions and modifications, and constitutional amendments are commonplace. Thus, the law evolves and similar factual situations separated by time and legal precedent may give rise to different legal outcomes. The core of legal decision making, however, is to apply those newly arising principles of law neutrally.

could have been convincingly argued to be. [*Chock-toot, supra* at 573.]

Of course, some legal issues do not have clear answers.[32] This is especially so in the context of legal issues presented before appellate courts, and even more true for those in the courts of last resort. Nevertheless, simply because "a case is hard" does not mean that "it is indeterminate." Solum, *On the indeterminacy crisis: Critiquing critical dogma,* 54 U Chi L R 462, 475 (1987). Issues of law are resolved by a reasoned application of neutral principles to a particular factual situation.[33] That the resolution of a particular case

[32] Nevertheless, the vast majority of legal controversies are easily decided and possess unquestionable legal outcomes. See, e.g., Kress, *Legal indeterminacy,* 77 Cal L R 283, 324, 336 (1989) ("most legal results are not open to serious doubt and are highly predictable"; "[w]hen focus is shifted to garden variety actions governed by law, determinacy predominates. The pervasiveness of easy cases makes it implausible that there is radical indeterminacy"); Schauer, *Easy cases,* 58 S Cal L R 399 (1985); Solum, *On the indeterminacy crisis: Critiquing critical dogma,* 54 U Chi L R 462, 472, 491-495 (1987) ("easy cases abound"); Hegland, *Goodbye to deconstruction,* 58 S Cal L R 1203, 1205, 1214 (1985) ("not only are there easy cases, but, as a general matter, principled decisionmaking exists") ("many appellate decisions show no sign of doctrinal uncertainty"); Sartorius, *Bayes' theorem, hard cases, and judicial discretion,* 11 Ga L R 1269, 1269 (1977) ("There is a uniquely correct result in the vast majority of cases"). Indeed, studies reveal only a small number of dissenting opinions. Kress, *supra* at 324. In other words, "easy cases" are pervasive. *Id.* at 296-297.

[33] "It is not the function of the judge to bring about some desirable state of affairs but to find objectively the right decision within the general system of rules, a system that exists independently of judicial activity itself." Barry, *The classical theory of law,* 73 Cornell L R 283, 285-286 (1988). See also Wechsler, *Toward neutral principles of constitutional law,* 73 Harv L R 1, 16 (1959) (the "special duty of the courts [is] to judge by neutral principles addressed to all the issues"). Thus, courts "are—or are obliged to be—entirely principled. A principled decision . . . is one that rests on reasons with respect to all the issues in the case, reasons that in their generality and their neutrality transcend any immediate result that is involved." *Id.* at 19.

Roscoe Pound explained the process of principled legal reasoning:

Law in the sense we are considering is made up of precepts,

may not appear obvious at the outset of litigation or an appeal does not belie the notion that a neutral and principled application of legal authority will result in one principled result.[34] While ambiguities within the law exist, they are resolved not by the predilections of individual judges, but by a reasoned application of legal principles. That dissents and conflicting opinions exist within the same legal system reveal only that some members of the judiciary disagree over the application or interpretation of guiding principles, not that a correct result is not achievable, or has not been achieved.[35]

technique, and ideals: A body of authoritative precepts, developed and applied by an authoritative technique in the light or on the background of authoritative traditional ideals. There is in any developed legal system a traditional technique of developing and applying legal precepts by which those precepts are eked out, extended, restricted, and adapted to the exigencies of administration of justice. This technique of developing and applying the precepts, the art of the lawyer's craft, is quite as authoritative as and no less important than the precepts themselves. [2 Pound, Jurisprudence, § 58, p 107.]

[34] Putting aside those appeals which are pursued for collateral reasons, such as for negotiation or delay, it is probably true that both sides believe they have good arguments and at least some chance of winning. This does not, however, prove rule indeterminacy; rather, it proves that one is easily deluded, particularly in the highly competitive world of litigation. [Hegland, n 32 *supra* at 1214.]

[35] Professor Dworkin illustrates:

´ If it is true that an exchange of promises either does or does not constitute a valid contract, and that someone sued in tort either is or is not liable in damages, and that someone accused of a crime either is or is not guilty, then at least every case in which these issues are dispositive has a right answer. It may be uncertain and controversial what the right answer is, of course, just as it is uncertain and controversial whether Richard III murdered the princes. It would not follow from that uncertainty that there is no right answer to the legal question, any more than it seems to follow from the uncertainty about Richard that there is no right answer to the question whether he murdered the princes. [Dworkin, *A Matter of Principle*

Furthermore, to embrace the plaintiff's view is to invite denigration of the rule of law.[36] Underlying plaintiff's position is the implicit assumption that appellate courts will differ in their application of the law and that no correct answer to legal issues exists—otherwise plaintiff must concede that the issue of proximate cause in the instant case should be taken from the jury because reasonable minds could not disagree on the legal outcome. Thus, plaintiff's position rests on the notion that courts in the same jurisdiction applying the same principles of law to the same facts may, for varying and unidentified factors, differ regarding the outcome of purely legal decisions, and that such differences are inherent in the law. Thus, the

(Cambridge, Mass: Harvard Univ Press, 1985), p 120. See also Cohen, ed, *Ronald Dworkin and Contemporary Jurisprudence* (Totowa, NJ: Rowman & Allanheld, 1984).]

[36] Essentially, the rule of law says that the requirements of justice must take a form such that persons can know what justice requires of them before they act and can detect abuses by those charged with law enforcement. If the formal and procedural requirements of the rule of law are adhered to, those "good" persons who seek to act properly can know what proper actions are. With this knowledge they can order their actions with those of others, thereby achieving a peaceful society with a minimum of conflict. . . .

Moreover, the formal and procedural standards provided by the rule of law address two problems inherent in the administration of justice: the problems of enforcement error and enforcement abuse. [Barnett, *Forward: Unenumerated constitutional rights and the rule of law,* 14 Harv J L & Pub Policy 615, 615-616 (1991).]

Justice Scalia explained the importance of rule of law:

Rudimentary justice requires that those subject to the law must have the means of knowing what it prescribes. . . . As laws have become more numerous, and as people have become increasingly ready to punish their adversaries in the courts, we can less and less afford protracted uncertainty regarding what the law may mean. [Scalia, *The rule of law as a law of rules,* 56 U Chi L R 1175, 1179 (1989).]

law is not determined by a neutral application of guiding principles. Such an hypothesis is repugnant to legal decision making and the rule of law. As Thomas Paine declared, "in America The Law is King. For as in absolute governments the King is law, so in free countries the law *ought* to be King; and there ought to be no other."[37] We are a nation, and a Court, ruled by law. Any suggestion that this Court or others might deviate from a pure application of the law and its guiding principles is unwarranted and contrary to the fundamental principles of adjudication. Furthermore, this hypothesis must be rejected wholeheartedly for it strikes at the very core of the law's legitimacy. The rulings of this Court are legitimate only as long as they rely primarily on the application of neutral principles originating from the constitution, statutes, regulations, or the common law. Hence, the "law is distinguished from other forms of public or authoritative decisionmaking not by its heavy use of outcome-determining rules laid down in advance, but by the use of procedures designed to ensure that legal decisionmaking is not merely the ad hoc imposition of personal will or the practice of politics." Schauer, *Rules and the rule of law,* 14 Harv J L & Pub Policy 645, 657 (1991).[38] Although the rule of law may be said to be

[37] *The Essential Thomas Paine* (New York: New American Library, 1969), p 49, quoting Paine, Common Sense (Philadelphia: 1776).

Chief Justice Marshall of the United States Supreme Court expressed similar sentiments when he wrote that the United States is "a government of laws, and not of men." *Marbury, supra* at 163. See also *Anway v Grand Rapids R Co,* 211 Mich 592, 597; 179 NW 350 (1920) ("We are still a government of laws, operating under a written Constitution").

[38] "The power conferred on this court is exclusively judicial, and it cannot be required or authorized to exercise any other." [*Anway,* n 37 *supra* at 602. Citation omitted.]

The people, through the constitution or the Legislature, formulate

an ideal, we do violence to this fundamental principle by encouraging its disregard.

Nor is this holding elitist. Juries traditionally do not decide the law or the outcome of legal conflicts. Juries are not appellate courts. To maintain the traditional role of the jury, the jury must remain the factfinder; *a jury may determine what happened, how, and when, but it may not resolve the law itself.* The determination of questions of law by the courts is not a new elitist prerogative— to the contrary, it is a vindication of the existence of the judiciary. Indeed, it is the very purpose of the judiciary.[39]

Moreover, this reasoning is overwhelmingly embraced by our sister jurisdictions. Indeed, at least nineteen jurisdictions directly addressing the issue have found it to be one of law, and no reported decisions have held otherwise.[40] Furthermore,

---

the guiding principles of Michigan—not this Court. Hence, if constitutionally empowered to act, " '[t]he propriety, wisdom, necessity, utility, and expediency of legislation are exclusively matters for legislative determination.' " *Black v Liquor Control Comm,* 323 Mich 290, 296; 35 NW2d 269 (1948), quoting *Rohan v Detroit Racing Ass'n,* 314 Mich 326, 347; 22 NW2d 433 (1946). In other words, the function of this Court is not to create policy, but to enforce it as embodied in law. See, e.g., Madison, *Federalist Papers,* No 47, Kramnick, ed (England: Penguin Books, 1987 [originally published in 1788]), pp 302-305.

[39] While the dissent appears concerned about the credibility of the legal profession to laymen, the spectacle of the battle of experts— proffering inconsistent and contradictory speculative theories about how the Court of Appeals would (or should) have ruled—that inevitably flows from the dissent could only encourage disrespect for both the rule and profession of law. Cf. *In re Air Crash Disaster at New Orleans, La,* 795 F2d 1230, 1233-1234 (CA 5, 1986). The role of an expert, of course, is to "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." MRE 702. But if the dissent's view were to prevail, an expert's testimony regarding "evidence" would simply be his opinion about what the law should be. "[T]he ultimate issue in such cases can too easily become whatever an expert witness says it is . . . ." *Air Crash Disaster, supra* at 1233. A jury, therefore, would be permitted to decide a case on the basis of an expert's conjecture or speculation. In our system of justice, however, damages may not be based on speculation and issues of law are resolved by courts.

[40] *Phillips,* n 22 *supra* at 421 ("Resolving legal issues on appeal is

reserved for the exclusive province of judges. Accordingly, where issues of causation in a legal malpractice action hinge upon the possible outcome of an appeal, such issues are to be resolved by the trial judge as questions of law"); *Croce v Sanchez,* 256 Cal App 2d 680, 683; 64 Cal Rptr 448 (1967) (finding "no error of the judge at trial in proceeding first on the legal issue whether an appeal of her original case [*Croce v Ryan,* No. 717307] would have resulted in a reversal of the judgment. This issue was one which could not be submitted to the jury"); *Fine & Block v Evans,* 201 Ga App 294, 295; 411 SE2d 73 (1991) ("a determination of whether an appeal to this Court would have been successful is a question of law, exclusively within the province of judges"); *Chicago Red Top Cab Ass'n, Inc v Gaines,* 49 Ill App 3d 332, 333; 364 NE2d 328 (1977) (affirming the trial court's dismissal of the plaintiff's action as matter of law because "[t]he burden is on the plaintiff to establish that it would have been successful in the prosecution of the appeal . . . . [I]t appears no argument has been advanced to support any such proposition here"); *Jones v Psimos,* 882 F2d 1277, 1281 (CA 7, 1989) (applying Indiana law) ("When analyzing the merits of an attorney malpractice claim, the court must put itself into the role of the court that ought to have reviewed the underlying claim but missed its chance because of the attorney's negligence in perfecting the appeal"); *Dings v Callahan,* 4 Kan App 2d 36, 38; 602 P2d 542 (1979) (affirming the trial court's dismissal of the plaintiff's action as a matter of law because the underlying lost appeal "fail[ed] to reflect a probability of success"); *Cabot, Cabot & Forbes Co v Brian, Simon, Peragine, Smith & Redfearn,* 568 F Supp 371, 374 (ED La, 1983) (applying Louisiana law) (holding that this causation determination "raises a question of law, not fact, within the exclusive province of the court, not jury, to decide"); *Romano v Weiss,* 26 Mass App 162, 170; 524 NE2d 1381 (1988) ("at least in instances where the point in dispute is one of settled law, the finder of fact should be instructed [or should instruct himself] what the law applicable to the subject is, and should not be permitted to return a finding or verdict premised on an erroneous view of the law"); *Hyduke v Grant,* 351 NW2d 675, 677 (Minn App, 1984) (finding that "whether an appeal would have been successful is a question of law" because "[a] court is qualified, in a way a jury is not, to determine the merits and the probable outcome of an appeal"); *Katsaris v Scelsi,* 115 Misc 2d 115, 118; 453 NYS2d 994 (1982) ("The Judge ruling on such a case must determine what the appellate court would have done 'as an issue of law' "); *Rinehart v Maiorano,* 76 Ohio App 3d 413, 420-422; 602 NE2d 340 (1991) (affirming a trial court's grant of summary judgment in favor of the defendant attorney in a legal malpractice case because the underlying defamation action was meritless as a matter of law); *Sutton v Whiteside,* 101 Okla 79, 80; 222 P 974 (1924) (dismissing a malpractice action because it found that "if an appeal had been perfected the judgment of the trial court must necessarily have been affirmed by the Supreme Court" as a matter of law); *Chocktoot, supra* at 573 ("Unlike its decision of a disputed issue of the professional standard of care, the jury cannot decide a disputed issue of law on the testimony of lawyers"); *Floyd v Kosko,* 329 SE2d 459, 461 (SC App, 1985) ("we hold that the question

while not directly addressing the specific issue, many other jurisdictions have unhesitantly resolved the legal issues present in the underlying litigation in attorney malpractice actions as if proximate cause was an issue for the court.[41] Acknowledged legal commentators also agree that

of whether the appeal would have been successful had the appeal been heard is in this instance a question of law"); *Millhouse, supra* at 628 ("in a case of appellate legal malpractice the determination of causation is a question of law"); *Goldstein v Kaestner,* 243 Va 169, 172; 413 SE2d 347 (1992) (holding "that the appropriate standard of review in an action of this nature is whether the client can prove that, had a timely appeal been filed, as a matter of law the judgment against him would have been reversed and judgment entered in his favor"); *Halvorsen v Ferguson,* 46 Wash App 708, 712-713; 735 P2d 675 (1986) ("Although questions of negligence and proximate causation are usually for the jury, the unique characteristics of a legal malpractice action may render the general rule inapposite in certain instances"); *Better Homes, Inc,* n 17 *supra* at 97 (a plaintiff may recover damages "where he can prove that a timely appeal would have resulted in a reversal of the judgment against him and entry of judgment in his favor as a matter of law"); *General Accident Fire & Life Assurance Corp, Ltd v Cosgrove,* 257 Wis 25, 27; 42 NW2d 155 (1950) ("Both parties agree that the sole question in this case is whether damages flowed to appellant as a result of respondent's failure to settle the bill of exceptions. This is obviously a question of law properly disposed of on motion for summary judgment"); cf. *Kidwell v Meikle,* 597 F2d 1273, 1294 (CA 9, 1979) (noting that a "federal trial judge should decide any legal issues that would have arisen in the hypothetical state suit as a matter of law in the Rule 10b-5 [promulgated under the Securities Exchange Act of 1934 (15 USC 78j[b])] suit"). But see *Selsnick v Horton,* 96 Nev 944, 949-950; 620 P2d 1256 (1980) (Gunderson, J., concurring in part and dissenting in part) (implicitly supporting the notion that experts may decide proximate cause).

Contrary to the dissent's assertion, the majority in *Selsnick* did not hold that the issue of causation in an appellate malpractice action is an issue of fact, but only that standard of conduct was such an issue.

Furthermore, the dissent's dismissal of some of these cases is simply unfounded. Each case either expressly announced or actually found that causation in an appellate attorney malpractice case is an issue of law for the courts to decide.

[41] See, e.g., *Kunau v Pillers, Pillers & Pillers, PC,* 404 NW2d 573 (Iowa, 1987); *Oteiza v Braxton,* 547 So 2d 948, 950 (Fla App, 1989); *Hurd v DiMento & Sullivan,* 440 F2d 1322, 1323 (CA 1, 1971); *A O Smith Corp v Lewis, Overbeck & Furman,* 979 F2d 546 (CA 7, 1992); *Gans v Gray,* 612 F Supp 608, 617 (ED Pa, 1985); *McCord v Bailey,* 204 US App DC 334, 340; 636 F2d 606 (1980).

the issue is one of law for the courts.[42] We find these authorities persuasive.

Thus, we hold that the issue of proximate cause in the instant case is reserved to the court because whether an appeal would have been successful intrinsically involves issues of law within the exclusive province of the courts, and remand the legal issue presented in the underlying litigation for resolution by the trial court.

### III

Plaintiff also contends that the trial court in the instant case decided the issue of proximate cause as a matter of law because it found that plaintiff would have prevailed on appeal. Plaintiff argues that the jury decided the issue of cause in fact by finding that Winiemko should have identified and appealed the error in the underlying litigation and that doing so would have resulted in a lower award of damages on retrial. Defendants counter that the issue was left to the jury.

A review of the transcript clearly reveals that the judge ruled that the issue whether the underlying suit would have been successful was one for the jury to determine.[43] Although the court held

[42] See 2 Mallen & Smith, *supra,* § 24.39, p 537. ("The decision about the proper resolution of a petition or appeal must and can be made by the trial judge as an issue of law, based upon review of the transcript and record of the underlying action, the argument of counsel, and subject to the same rules of review as should have been applied [by the appellate court] to the motion or appeal"); Leibson, *Legal malpractice cases: Special problems in identifying issues of law and fact and in the use of expert testimony,* 75 Ky L J 1, 3 (1986-87) ("This Article suggests that the law is best served in a litigation negligence case when the trial judge and the jury each decide those issues they would have decided at the trial of the underlying action").

[43] The court, for instance, in its opinion regarding defendant's pretrial summary disposition motion found:

To establish a *prima facie* case, Plaintiffs must allege and prove four elements:

that plaintiff had met the "test as to causation,"[44]
the court's analysis indicated that it had deter-
mined that no question of law was before it, and
that proximate cause "can be a question for a
jury."[45] Thus, the court did not address the issue as
a matter of law, and its ruling must be reversed.

IV

Finally, plaintiff suggests that to reverse the
Court of Appeals in the instant case infringes the
right to a jury trial protected by Const 1963, art 1,

> 1. The existence of an attorney-client relationship;
> 2. The acts constituting the negligence;
> 3. A proximate causal relationship between the negligence
> and the Plaintiff's injuries;
> 4. The fact and extent of the injury alleged.
>
> \* \* \*
>
> Defendant argues that in *Kauffman,* there was no error as to
> the two damage awards and the verdict was proper because one
> damage award was for exemplary damages and the other
> award was for compensatory damages. Thus the appeal, even if
> timely filed, would not have been successful. . . . Plaintiff
> responds that Defendant's motion should be denied as this is
> not an issue of law to be decided by the Court, but should the
> Court find as a matter of law, a reasonable likelihood of
> prevailing on appeal, the Court may render judgment for
> Plaintiff on this issue.
>
> \* \* \*
>
> [T]here are no Michigan cases requiring this court to rule as
> a matter of law on the merits of one or more of the four
> elements of a claim for professional negligence.
>
> \* \* \*
>
> [T]he suit within a suit doctrine does not ipso facto call for
> this finding to be made as a matter of law before trial but can
> be a question for a jury with proper instructions on proximate
> cause and damages including not only the result of an appeal
> but the loss of the value of the opportunity to appeal. . . .
>
> The Court finds that Plaintiff has met the *Basic Foods* [sic]
> test as to causation and damages as well as the attorney-client
> relationship and claimed negligent acts, and thus has estab-
> lished a *prima facie* case of professional negligence.

[44] *Id.*
[45] *Id.*

§ 14.[46] This Court has long held that "[t]he object of construction, as applied to a written constitution, is *to give effect to the intent of the people adopting it.*" 1 Cooley, Constitutional Limitations (8th ed), p 124 (emphasis in original).[47] Hence, the primary source for ascertaining its meaning is to examine its plain meaning as understood by its ratifiers at the time of its adoption. *Committee for Constitutional Reform v Secretary of State,* 425 Mich 336, 342; 389 NW2d 430 (1986). Often an examination of history is necessary to the proper interpretation of the constitution, therefore, this Court may " 'endeavour to place [itself] in the position of the framers of the Constitution, and ascertain what was meant at the time . . . .' " *Id.,* quoting *Pfeiffer v Detroit Bd of Ed,* 118 Mich 560, 564; 77 NW 250 (1898). See also *Sitz v Dep't of State Police,* 443 Mich 744, 764; 506 NW2d 209 (1993). This is especially true when determining the constitutional guarantee of trial by jury. See, e.g., *Tabor v Cook,* 15 Mich 322, 325 (1867) ("The intention here is plain, to preserve to parties the right to have their controversies tried by jury, in all cases where the right then existed"); *Abner A Wolf, Inc v Walch,* 385 Mich 253; 188 NW2d 544 (1971).

Thomas Jefferson described the jury as " 'the only anchor yet imagined by man, by which a government can be held to the principles of its constitution.' "[48] Strongly embracing this principle,

---

[46] The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.

See also MCL 600.1352; MSA 27A.1352; MCR 2.508(A), MCR 2.509(A).

[47] The Court's duty "is to enforce the law which the people have made, and not some other law which the words of the constitution may possibly be made to express." *People v Harding,* 53 Mich 481, 485; 19 NW 155 (1884).

[48] *Lucky Ned Pepper's Ltd v Columbia Park & Recreation Ass'n,* 64

Michigan, from its very origins as a territory in the American Union, has vigorously protected the ancient right of a trial by jury.[49]

Yet, at no time has the right to a jury trial in any fashion been understood to displace the authority and duty of the judiciary to determine legal issues. For as long as the right to a jury has been recognized, the exclusive province of the court to rule on matters of law has been acknowledged. See, e.g., *Demill v Moffat, supra* at 411-412. As Justice COOLEY summarized, over a century and a half of jurisprudence has recognized that a judge's duty is to inform the jury "what . . . the law is," while the jury "should be left free and unbiased by [the judge's] opinion to determine for themselves whether the facts in evidence," under the instructions of the judge, show a guilty verdict. Cooley, *supra* at 678. See also *Demill, supra* at 411-412; *Johnson, supra* at 258. Nor does evidence exist that suggests that the ratifiers or framers of the 1963 Constitution intended to alter this long-established division between judge and jury. In fact, the Address to the People notes that "[n]o change" was intended from prior constitutions. 2 Official Record, Constitutional Convention 1961, p 3364. See also *Abner A Wolf, supra.* Hence, the right to a jury trial is in no manner infringed when the court proceeds to evaluate the legal merits of an underlying appeal in a legal malpractice action alleging negligence in the pursuit of the appeal. Cf. *Buckley v Gibbs,* 321 Mich 367, 370; 32

Md App 222, 225; 494 A2d 947 (1985), quoting Jefferson, Letter to Thomas Paine (1789).

[49] See Northwest Ordinance of 1787, art 2 ("No man shall be deprived of his liberty or property, but by the judgment of his peers, or the law of the land"); Const 1835, art 1, § 9 ("The right of trial by jury shall remain inviolate"); Const 1850, art 6, § 27; Const 1908, art 2, § 13; Const 1963, art 1, § 14 ("The right of trial by jury shall remain").

NW2d 483 (1948) ("Defendant's appeal was properly dismissed . . . as a matter of law. It therefore cannot be said that defendant was deprived of her right to trial by jury").

v

In summary, we hold that the question whether a court or a jury should determine whether the underlying appeal would have been successful is reserved to the court because whether an appeal would have been successful intrinsically involves issues of law within the exclusive province of the judiciary. Furthermore, we find that the trial court failed to resolve the issue as a matter of law, and that a determination of the issue by a court does not deprive a litigant of the right to a trial by jury. Thus, we reverse the decision of the Court of Appeals and remand the case to the trial court for proceedings in accordance with this opinion.

GRIFFIN and MALLETT, JJ., concurred with RILEY, J.

CAVANAGH, C.J. (*concurring*). I am in general agreement with the majority's holding and analysis. To the extent that an underlying appeal involves an issue of law, decision making on the likely success of that appeal should be reserved to the court. Since the early days of the republic, our legal system has required the court, not the jury, to declare what the law is. The unusual procedural posture of an appellate malpractice case does not warrant abrogation of this well-established and constitutional mandate. Despite my basic accordance, I write separately to distance myself from the majority's discourse on the "rule of law" and the process of legal decision making. While scholarly, the majority's exposition on such matters is

unnecessary to the holding in this case, and I regard it as dicta.

Accordingly, I respectfully concur.

BOYLE, J. (*concurring*). I agree with the result reached by the plurality because treating this issue as a question of law represents the best we can do. The circuit court will decide the question as a matter of law. If the Court of Appeals disagrees, it will reverse. This result is only possible if causation in appellate malpractice cases is treated as a question of law.

The aim of both civil and criminal litigation is to determine the truth and apply our laws to it. Because our courts are run by and for people, however, the goal is inherently unobtainable. In other words, the system is not perfect, but we do the best we can.

In a typical case where causation is an issue, the question might be whether a car's allegedly defective steering mechanism caused an accident. The issue would be cause in fact—would the accident have happened if the steering had not been defective? The most accurate answer to this question could be obtained by reenacting the events leading up to the accident using a car that does not have defective steering. This type of reenactment, however, is usually neither possible nor, because of the expense and potential danger, desirable. For those reasons, the best we can do is give the evidence and expert advice* to a jury and let it decide.

This method does not represent the best we can do with cases alleging appellate legal malpractice. At issue is how the courts would have decided a

---

* We cannot simply assign the question to an expert because, if there is any disagreement among experts, it is necessary to decide which expert to use. We do, however, restrict which persons may testify as experts to those qualified "by knowledge, skill, experience, training, or education . . . ." MRE 702.

legal question had it been properly raised or filed. Unlike cases alleging malpractice by doctors or engineers, in which the issue is what result would have been produced by a different procedure or structure, the issue in appellate malpractice cases is what the courts would have decided. If they would have decided the underlying case in favor of the plaintiff, then the plaintiff's damages were caused by the defendant's malpractice. Letting a jury decide how an appellate court would answer a legal question, however, is akin to letting a jury decide what a person in the courtroom is thinking. In both instances, a better way to find out would be to ask.

I am not saying that the law is nothing more than what judges say. It is unnecessary to pretend we have answered this ancient and very complex question that relates to how an appeal *should* be decided. The issue in this case is how an appeal *would* have been decided if the appeal had been timely filed. For the purpose of answering this question, we need only agree that the answer is what the judges would have decided, regardless of whether that might be right in a metaphysical sense. The best way to determine what they would have decided is to ask them by framing the question as one of law.

BRICKLEY, J. (*dissenting*). I respectfully dissent from this Court's decision that a determination of causation in cases of appellate malpractice is a question of law that must be decided by a trial judge and not a question of fact to be resolved by a jury.

### INTRODUCTION

Foundationally, the majority opinion works from an apparently simple premise—namely, that judicial appeals are resolved exclusively as matters of

law, not fact. Because courts decide matters of law, while juries must "remain the factfinder,"[1] the majority concludes that only the trial judge may determine if an underlying legal appeal would have been successful.[2] For the reasons stated below, I do not subscribe to this reasoning.

I

A prima facie case of appellate malpractice requires that a plaintiff establish, inter alia, that the defendant's negligence "was a proximate cause of [the plaintiff's] injury. . . ." *Coleman v Gurwin,* 443 Mich 59, 63; 503 NW2d 435 (1993); *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 690; 310 NW2d 26 (1981). This "causation" mandate requires a plaintiff to prove that, absent the defendant's negligence, the plaintiff would have succeeded in the underlying, never-taken appeal. *Coleman, supra* at 63. In this respect, the plaintiff is charged with proving what is often referred to as a " 'suit within a suit.' " *Id.* at 64; *Basic Food Industries, supra* at 691 (quoting 45 ALR2d 5, § 2, p 10).

A

In an action for appellate malpractice, the determination of "causation" demands that a decisionmaker decide, at trial, how a particular panel of the appellate court should have ruled if the underlying appeal had been properly taken by the defen-

---

[1] *Ante* at 601.

[2] "[W]hether an appeal . . . would have succeeded . . . is an issue for the court because the resolution of the underlying appeal originally would have rested on a decision of law. With rare exception, appeals are based on and resolved as matters of law, not fact." *Ante* at 589 (citations omitted). The "rare exception" referenced by the majority is that situation in which an "appellate court is empowered to review the facts of a lower tribunal de novo . . . ." *Ante* at 589, n 21.

dant.[3] It is notable that, in making this determination, the decisionmaker is *not* guided by an appellate record: an appellate court *has not rendered a ruling or decision.* Accordingly, the underlying "suit within a suit" is simply a hypothetical inquiry—one that requires the decisionmaker to retroactively examine the law as it existed at the time of the never-taken appeal in a suit between different parties in an entirely different legal contest. I believe that such an inquiry concerns an issue of *fact* to be answered by the factfinder.

The question "What *is* the applicable law?" is unmistakably one of the most important inquiries to be resolved at a trial. This query—which generally requires the decisionmaker to determine what the law *presently is*—raises an "issue of law" properly resolved by the trial judge. This is because the question demands an articulation of those particular laws that must be applied in the actual dispute presently before the court. This articulation, therefore, represents a precedential legal conclusion properly made by the trial court.[4]

However, this important inquiry must and does change when determining causation in an action for appellate malpractice. Because the decisionmaker, at trial, must look retroactively to the law

[3] See *ante* at 589 (" '[T]he basic premise of trying the underlying action is to prove what the result should have been' ") (quoting 2 Mallen & Smith, Legal Malpractice (3d ed), § 27.10, p 652).

[4] In the case at bar, the trial judge properly articulated for the jury what law *was* applicable in the appellate malpractice trial. This guidance was specifically based on standard civil jury instructions for professional negligence claims, SJI2d 30.01 (professional malpractice instructions), for burden of proof and causation determinations, SJI2d 30.03 (burden of proof in professional malpractice), and included a special instruction that damages were not to be duplicated. These instructions were consistent with Michigan case law concerning legal malpractice. See, e.g., *Coleman* at 63 (elements of professional legal malpractice); see also *Babbitt v Bumpus,* 73 Mich 331, 337-338; 41 NW 417 (1889). Accordingly, the instructions given were presumptively proper.

as it existed *at the time the appeal would have been taken,* the important issue is no longer "what is the law?" but, instead, "what *was* the law?" Simply, how this law is *examined* at trial changes greatly in the context of an appellate malpractice action.

The important query, therefore, is straightforward:
What law was in existence at the time an appeal would have been taken?

Notably, the answer is equally simplistic: this inquiry into the past is like any other search for fact. What the law *was* is *not* a legal conclusion to an "issue of law" but, instead, is a *present* assertion of fact properly deduced by examining the field of law as it existed at the time an appeal should have been taken.[5] While this assertion arises in the present (i.e., at the malpractice trial), it is inextricably founded in the past—based on a prior set of facts and affairs objectively determinable by any layperson. Further, the query does not demand that a judge articulate a binding, prece-

[5] Indeed, the following hypothetical situation succinctly illustrates the very point that I am making—namely, that what the law *was* may be very different from what the law *is:*

Suppose that the applicable law regarding damages, as it existed at the time the underlying appeal should have been taken, provided that double recovery for a single injury was permissible (Law 1). Now suppose that after the defendant's failure to appeal, but before trial, the applicable law of damages was changed to expressly prohibit double recovery for a single injury (Law 2). This second law does not apply retroactively. Which law is "applicable" for purposes of the determination of causation?

While Law 2 is what the law presently *is,* Law 1 is what the law *was* when an appeal would have been taken. For purposes of this determination of causation, Law 1 applies. The process of articulating Law 1, however, does not create a precedential legal ruling, and is not an "issue of law," because Law 2 is *presently* applicable. Rather, this articulation is simply a present assertion of a past fact: i.e., that the applicable rule of law *was* Law 1.

dential legal decision on the present state of law. Rather, it simply asks the decisionmaker to gaze into the past and identify *what the law was.* The answer, given in the context of a hypothetical appeal that never took place, is neither binding nor precedential as a legal ruling—it is simply an assertion of fact made for the purposes of determining "causation."

The remaining issue is *who* should answer this "question of fact." The general rule in Michigan is that questions of fact are properly resolved by a jury. I am unpersuaded that this rule should be altered simply because the factual issue arises in an appellate malpractice case and, accordingly, would leave the determination to a jury.[6]

B

Even if one concludes that the identification of applicable law in an underlying appeal is a task properly entrusted to the trial court, this does not suggest (although the majority does)[7] that there is no proper role for a jury in the "causation" determination. The fact is that law, no matter how adduced, must be *applied* to fact to reach a determination of causation.[8] Such an application is

---

[6] I also believe that the testimony of expert witnesses would be permissible to aid the jury in making this determination. While I generally agree with the majority that expert witnesses may not testify on a " 'question of . . . law,' " *ante* at 592 (quoting *People v Lyons,* 93 Mich App 35, 46; 285 NW2d 788 [1979]), expert testimony concerning what the law *was* simply does not concern or create an "issue of law" but, rather, addresses an issue of fact properly resolved by the jury. In this regard, expert testimony merely helps the jury to pick among conflicting interpretations of fact (i.e., what the law was).

[7] See n 2.

[8] Indeed, as the majority acknowledges, this desire to reach a result —i.e., a determination of "causation"—is the primary purpose for resolving the "suit within a suit." See *ante* at 589 (" '[T]he basic premise of trying the underlying action is to prove what the *result* should have been' ") (quoting 2 Mallen & Smith, n 3 *supra*).

unquestionably a task within the province of a jury.[9]

This hybrid process of applying law to fact is mistakenly ignored by the majority.[10] This oversight disregards well-recognized distinctions between the roles of trial judge, and of jury, in our system of justice. However, because the issue was neither discussed by the majority nor by the Court of Appeals, I decline to address it in greater detail.

C

I am also troubled that a determination of causation by the trial court in an appellate malpractice case may be inconsistent with Michigan case law and court rules. This conclusion is based on the fact that resolution of the "case within a case"

[9] Indeed, this decision-making process is not only sanctioned by the Michigan Constitution, it is also one that illustrates and forms the basis of our entire jury system. As the United States Supreme Court has so ably explained:

> It is a basic premise of our jury system that the court state the law to the jury and that the jury applies that law to the facts as the jury finds them. [*Delli Paoli v United States*, 352 US 232, 242; 77 S Ct 294; 1 L Ed 2d 278 (1957); see also *People v Lewis*, 6 Mich App 447, 454; 149 NW2d 457 (1967) (quoting *Delli Paoli*).]

See also Prosser & Keeton, Torts (5th ed), § 45, p 320 ("Two kinds of questions, then, *are always to be decided by the jury* if reasonable persons could differ about them on the evidence received at trial—first, fact questions in the usual sense and, second, *evaluative applications of legal standards . . . to the facts.*"). (Emphasis added.)

[10] In fact, while the majority neglects in its analysis any discussion concerning this hybrid facet of a "causation" determination, its opinion ironically concedes the very existence of this application process:

> Issues of law are resolved by a reasoned *application* of neutral principles to a particular factual situation. [*Ante* at 597. Emphasis added.]

See also *ante* at 600 (the majority argues that "pure application" of neutral principles is necessary to legitimate decision making).

is analogous to an action for a declaratory judgment. In effect, the decisionmaker is being asked to declare the rights of certain persons in an underlying appeal that has never taken place.

Michigan law requires that declaratory judgments be made "[i]n a case of actual controversy . . . ." MCR 2.605(A)(1); *Allstate Ins Co v Hayes,* 442 Mich 56, 65; 499 NW2d 743 (1993). This prerequisite—similar in purpose to the "case or controversy" requirement of federal law[11]—is aimed at insuring the justiciability of certain cases brought before Michigan courts. *Id.* at 66 ("Properly understood . . . the actual controversy requirement is simply a summary of justiciability as the necessary condition for judicial relief"). Importantly, the requirement has been recognized by this Court as *"prevent[ing] a court from deciding hypothetical issues." Shavers v Attorney General,* 402 Mich 554, 589; 267 NW2d 72 (1978). (Emphasis added.) Without satisfying the requirement, a case may not be resolved by the court:

> [I]f the issue is not justiciable because it does not involve a genuine, live controversy between interested persons asserting adverse claims, the decision of which can definitively affect existing legal relations, a court may not declare the rights and obligations of the parties before it. [442 Mich 66. Citations omitted. Emphasis added.]

Because the *underlying appeal* in an appellate malpractice case—the determination of causation

---

[11] The United States Constitution requires that federal courts only decide actual cases or controversies. US Const, art III, § 2. The similarity of Michigan's "actual controversy" requirement, and the United States Constitution's "case or controversy" requirement, has been acknowledged by at least one member of this Court. See *Girard v Wagenmaker,* 437 Mich 231, 266, n 14; 470 NW2d 372 (1991) ("Michigan' law embodies a similar requirement of an 'actual controversy' ") (CAVANAGH, C.J., dissenting).

—is a hypothetical inquiry not actually before the trial court, the *underlying appeal* itself does not involve a "genuine, live controversy" between interested persons.[12] Accordingly, resolution of this "hypothetical issue" as a question of law is arguably violative of the court rule, as well as Michigan case law, in spirit if not in fact.

II

I am also troubled by the majority's attempt to distinguish appellate attorney malpractice decisions from other professional malpractice cases where this Court has permitted juries to make causation determinations. The majority argues that while in other professions there are "no predetermined rule[s] discoverable by man that determine[ ] causation," *ante* at 595, appellate malpractice cases are decided by predetermined, neutral principles of law that dictate only one correct result. I believe that this rationale is both tenuous and self-serving, and fear that this Court's holding will only further alienate other professions from the legal system.

A

The majority premise that there can be but one "correct answer" to a legal issue is somewhat accurate insofar as judicial resolution of a legal issue is also a *final* pronouncement on a question of law. It has been said that, like the proverbial baseball umpire, an appellate court does not have the final word because it is correct, but is nevertheless correct because it has the final word. Therefore, there may arguably be one "correct" answer to a legal question insofar as that answer

---

[12] Of course, the malpractice trial involves such a controversy—i.e., whether professional negligence in fact occurred.

is ultimately given by a particular jurisdiction's highest court.[13]

Be that as it may, the majority's premise is only relevant if its first assumption, i.e., that the causation issue is also a question of law, is valid. As previously discussed, it is my view that the causation determination in an appellate malpractice case does not require that a jury decide what the law is—i.e., the jury does not pronounce, resolve, or otherwise create a principle of law. Rather, the jury is asked to identify what the law *was,* and apply it to the facts of a never-taken appeal. In effect, the jury is simply guessing what principle of law might have been applied by the appellate court. This guess is not binding on subsequent courts or juries; it will never be annotated or summarized as a "legal ruling"; it will appear in neither hornbook nor case text as a "legal principle" or "rule of law." It is not the resolution of a "legal issue," but, instead, a causation determination made by the jury to resolve that malpractice case before it.

B

The majority's premise concerning predetermined, neutral principles is used to distinguish causation determinations in appellate malpractice cases from identical determinations in other professional malpractice scenarios, particularly medical malpractice. Because the premise supposedly forecloses alternative or dissenting viewpoints, it also demands that legal issues have only one

---

[13] It is interesting to note that, if one of the parties to this case had not appealed the Court of Appeals decision, that opinion would be the law in Michigan and binding upon the trial and appellate benches. Further, if a similar question subsequently came to this Court when those members of the instant Court of Appeals panel, or other like-minded jurists, had perhaps been elected to this bench, the majority view taken today would presumably be rejected. So much for only one "correct" answer.

"correct" resolution.[14] There being no possibility for a legitimate dispute about an issue of law, prediction of a legal outcome by a jury is absolutely precluded—a decision must be made by the trial judge.[15] For the reasons detailed below, I subscribe neither to the premise nor to its application by the majority.

Even if one concedes the existence of such neutral principles in the law, I fail to see how this conclusion distinguishes the legal profession from other fields of expertise. Similar principles certainly exist in other professions. There is in medicine, for example, always an ultimate medical explanation of why a person becomes ill or dies. Just because this reason cannot be accurately discerned, or just because different doctors may disagree on its validity or applicability in a certain factual scenario, does not make the explanation any less "neutral" in its applicability. Similarly, in the engineering profession there are ultimate scientific principles—rules of mathematics and physics, for example—that, if accurately discerned, explain why certain events or results occur in specific factual situations. Again, while the existence of the principle may be difficult to identify, and reasonable engineers or scientists may disagree on its validity or applicability to a specific factual scenario, this does not make the principle any less "neutral" or "predetermined." The same can be said for the fields of accounting, finance, psychology, mathematics, and virtually any other profession.

---

[14] [A] neutral and principled application of legal authority *will result* in one principled result. [*Ante* at 598. Emphasis added.]

[15] The outcome of appellate cases is decided on the basis of predetermined principles of law. There simply is no disputed issue of fact for a jury to decide with respect to how a legal issue would have been decided on appeal. [*Ante* at 595-596.]

Therefore, if the majority rationale is accepted it must also be acknowledged that there is always, in almost *any* professional malpractice question, one "correct" answer or response to a specific factual situation. The existence of this "correct" answer does not preclude the existence of alternative, and apparently valid, explanations. Rather, the existence of these alternative explanations gives rise, as the majority references, to "probabilities"[16]— scientific probabilities, medical probabilities and, I believe, legal probabilities. Such probabilities do not necessarily mean that there is no one universally "correct" answer—rather, they only suggest that the "correct" answer to a particular factual scenario may deviate from the actual answer by virtue of its probability. Because reasonable jurists may disagree on the appropriate answer to a given factual scenario in the law, the legal profession is really no different than any of its professional counterparts.

The important question, therefore, is this: If a jury may decide issues of causation in medical, engineering, accounting, and scores of other complicated professional malpractice scenarios, why preclude such a determination in the legal malpractice case? The majority explains that, because the appeal presents issues of law exclusively, and because there is only one correct answer to an issue of law, that there is no room for disagreement and a jury verdict is thus precluded. *Ante* at 595-596. There are two problems with this reasoning. First, appeals do not exclusively present issues of law. Even if "neutral" principles of law do exist, and even if they must be resolved, articulated, or

---

[16] *Ante* at 595. Admittedly, while the majority refers to "probabilities," it also denies that a conflict of legal probabilities is ever possible. Accordingly, the majority also concludes that "summary disposition regarding a legal issue is always appropriate because no clash of scientific probabilities exists." *Id.*

determined by the trial judge, the determination
of a "correct" answer requires that such principles
*be applied to unique factual patterns,* and this is a
task within the exclusive province of the jury. See
ns 13-15 and accompanying text.

More problematic, however, is the implicit as-
sumption that permeates the majority opinion:
namely, that when it comes to identifying the
"correct" answer, " '[a] judge is clearly in a better
position to make this determination.' "[17] In effect,
the majority would have the trial court both artic-
ulate the legal principle *and* apply it to the facts
of an underlying appeal to reach a decision regard-
ing causation (the "correct" result) on its own.
Presumably, such a broad grant of power is justi-
fied because a judge is more qualified to under-
stand the law than is a jury. If this sort of reason-
ing is adopted, however, then must we also con-
cede that the doctor is better able to understand
"issues of medicine," the engineer better able to
understand "issues of engineering," and the ac-
countant better able to understand "issues of ac-
counting" than is the ordinary jury of laypersons?
And, if we must continue to insist that juries
decide causation in these types of malpractice
cases, then must we not also concede that a *jury* of
doctors, engineers, or accountants is more appro-
priate?

The answer is in the negative.[18] We trust juries
of laypersons to make important determinations of
causation in malpractice cases involving other
professions. Similarly, we should trust juries to
make such determinations—to apply law to fact—

---

[17] *Ante* at 590, quoting *Millhouse v Wiesenthal,* 775 SW2d 626, 628
(Tex, 1989).

[18] Indeed, not only is our answer in the negative, most experienced
trial counsel would purposefully exclude such expertise from the jury
panel.

in appellate attorney malpractice cases. The dilemma, if it exists, really lies in the structure of our legal system. The majority argues that in an appellate malpractice action an underlying appeal is decided as an "issue of law." Even assuming the accuracy of this assertion, such a unique situation could *never* arise in other nonlawyer malpractice cases simply because *there are no "underlying appeals" in these sorts of malpractice actions.* Accordingly, the issue of causation in a medical malpractice case (or any other malpractice case with the exception of legal malpractice) *will never be decided as an "issue of law"* and, accordingly, *will never not be decided by a factfinder.* What the majority really does, therefore, is advantageously utilize the unique procedural posture of appellate malpractice cases to carve out an exception—for attorneys only—from the jury system. This approach is self-serving and has the potential to reinforce an already problematic image of systemic attorney self-protection and further alienate from the legal system our peers in the other professions.

C

In summary, even if I were to concede that there is only one "correct" answer to a legal question, I cannot conclude that permitting a jury to make a causation determination in a case of appellate malpractice—i.e., to guess how a never-taken appeal would have been resolved by a hypothetical appellate court—is any more denigrating to the law or the judiciary than are similar determinations in malpractice scenarios involving other professions. Juries in medical malpractice cases are routinely asked to determine what would have happened to a patient had an alternative medical procedure been employed by a doctor. Similarly,

juries in products liability or engineering malprac-
tice cases are often required to determine whether
an accident or event would have occurred had a
different design or manufacturing process been
employed. These determinations of what might
have transpired, had an alternative course of ac-
tion been taken, are precisely the sorts of ques-
tions we routinely call upon juries to resolve.
Their answer, in an appellate malpractice action,
is no more caustic to the law than it is to other
professional endeavors.[19]

I certainly agree with the majority that we
should not allow the jury to make law. However,
my position does not permit a jury to "make law"
any more than it allows a jury to articulate medi-
cal or engineering principles. Nor does it argue
that juries are as good, or better than, the judi-
ciary at determining or articulating the law. Ju-
ries are no more qualified for this task than they
are for discerning and applying principles of medi-
cine or engineering. Indeed, even if so qualified,

[19] While the concurring opinion notes that "[t]he aim of both civil
and criminal litigation is to determine the truth and apply our laws
to it," *ante* at 609, and admits that "the best we can do is give the
evidence and expert advice to a jury and let it decide," *id.,* it
concludes that "[t]his method does not represent the best we can do
with cases alleging appellate legal malpractice." *Id.* Why not? Be-
cause letting a jury decide proximate causation supposedly "is akin *to*
letting a jury decide what a person in the courtroom is thinking. In
both instances, a better way to find out would be to ask." *Id.* at 610.

Ask whom? I do not dispute that the "better way" to determine
what an appellate court will do is to take an appeal—to "ask" the
appellate court directly. What the majority fails to realize, however,
is that this suggested approach is not just the "better way" to
conclusively deduce what an appellate court will do, *it is the only
way.* However, and more importantly, it is also a method *that is no
longer available to the plaintiff* because defendant-attorney failed to
properly appeal in the first place. Indeed, this lack of an available
appeal—this inability to just "ask"—is what gave rise to the legal
malpractice suit.

In the instant action, plaintiff certainly would have liked to "ask"
the appellate court what it was going to do with this case. In the
context of appellate malpractice, however, this ideal has no founda-
tion in reality—the option of an appeal is simply no longer available.

such articulation and determination is simply not the role of a jury. The jury should merely be permitted to do that for which it is impaneled— determine, among competing probabilities, what result might have occurred had something differ- ent been done by a defendant.

### III

Another aspect of the majority opinion that I find troubling is the blurring of important distinc- tions between determinations of "proximate cause" and "cause in fact" in cases of appellate malprac- tice. This oversight has the effect of intruding upon traditional roles of a jury in vitally impor- tant causation determinations—a role that is not, and should not be, diminished simply because it is implicated in an appellate malpractice appeal.

As previously discussed, a prima facie case of appellate malpractice requires that a plaintiff es- tablish that the defendant's negligence " 'was a proximate cause of [the plaintiff's] injury . . . .' "[20] This Court has previously alluded to the fact that the issue of "cause in fact" may properly be analyzed as part of a "proximate causation" determination.[21] Nevertheless, there can be no doubt that "proximate cause" and "cause in fact" are distinct and separate issues, and that the resolution of each rests upon unique considerations.[22] Indeed, the majority concedes this

[20] See p 611.

[21] *Moning v Alfono,* 400 Mich 425, 440, n 13; 254 NW2d 759 (1977).

[22] Indeed, while this Court's opinion in *Moning,* n 21 *supra,* has been interpreted as viewing "cause in fact" as a lesser included concept of "proximate causation," see *Ignotov v Reiter,* 425 Mich 391, 404; 390 NW2d 614 (1986) (Riley, J., dissenting) ("Included within the element of 'proximate cause' is the requirement that the plaintiff establish cause in fact"), in fact *Moning* explicitly recognized the unique nature, and resolution, of both causation questions:

very point.[23] However, the majority also concludes that the distinction between "proximate cause" and "cause in fact" is "irrelevant to the resolution of the instant case." *Ante* at 586, n 14.[24] I disagree.

In Michigan, proximate causation " 'is essentially a problem of law.' "[25] Often referred to as "legal cause" or "responsible cause,"[26] proximate cause is basically a determination whether an actor may be held legally responsible for a harm.[27] Being a subject for legal determination, proximate cause questions may properly be resolved by the trial judge. In the context of an appellate malpractice appeal—where it is one of the prima facie elements of a valid claim[28]—proximate cause is

---

"[I]t is possible to approach 'proximate cause' as a series of *distinct problems, more or less unrelated, to be determined upon different considerations.* The list . . . would include at least the following problems: 1. The problem of causation in fact . . . ." [*Moning, supra* at 440, n 13 (quoting Prosser, Torts [4th ed], § 42, p 249).]

[23] *Ante* at 586, n 13 (" 'The question of fact as to whether the defendant's conduct was a cause of the plaintiff's injury *must be separated* from the question as to whether the defendant should be legally responsible for the plaintiff's injury.' ") Quoting *Richards v Pierce*, 162 Mich App 308, 317; 412 NW2d 725 (1987) (emphasis added).

[24] Interestingly, *the majority acknowledges that the causation issue raised by defendant "is more appropriately considered an issue of cause in fact* . . . ." *Ante* at 586, n 14 (emphasis added). In short, it is abundantly clear that the majority does not dispute that distinct "cause in fact" issues are implicated in both the case at bar and, presumably, in appellate malpractice cases generally. In fact, the majority *admits* that the causation issue is one of cause in fact.

[25] *Moning*, n 21 *supra* at 440 (quoting Prosser, n 22 *supra*, § 42, p 244).

[26] Prosser & Keeton, n 9 *supra*, § 41, p 263, § 42, p 272 (citations omitted).

[27] [Proximate cause] is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. [Prosser & Keeton, n 9 *supra*, § 42, p 273.]

[28] *Coleman, supra* at 63.

essentially a preliminary determination whether a plaintiff has alleged enough to get to a jury.

Cause in fact, also known as "but for" causation,[29] is simply "[t]hat particular cause which produces an event and without which the event would not have occurred."[30] While often "hopelessly confused" with proximate causation,[31] the cause in fact question is well recognized as the quintessential issue of fact to be decided by a jury:

> [T]he simplest and most obvious problem connected with "proximate cause" is that of causation in "fact." This question of "fact" ordinarily is one upon which all the learning, literature and lore of the law are largely lost. *It is a matter upon which lay opinion is quite as competent as that of the most experienced court. For that reason, in the ordinary case, it is peculiarly a question for the jury.* [Prosser & Keeton, Torts (5th ed), § 41, pp 264-265. Emphasis added.]

The distinction between "cause in fact" and "proximate causation" cannot be overemphasized in cases of appellate malpractice. Proximate cause is an "issue of law" appropriately determined, as a preliminary matter, by the trial judge. Cause in fact questions are "issues of fact" that must be decided by the factfinder—commonly a jury.

In the case at bar, the trial court's ruling that

---

[29] Prosser & Keeton, n 9 *supra*, § 41, pp 265-266; *Coleman, supra* at 63 ("Hence, a plaintiff in a legal malpractice action must show that *but for* the attorney's alleged malpractice, he would have been successful in the underlying suit") (emphasis added); see also *Ignotov*, n 22 *supra* at 405 (RILEY, J., dissenting) ("Therefore, as part of the plaintiff's burden of proof to establish liability on behalf of the defendant, the plaintiff had to prove cause in fact, i.e., *but for* the attorney's negligence the plaintiff would have retained his parental rights") (emphasis added).

[30] Black's Law Dictionary (6th ed), p 221 (definition of "cause in fact").

[31] *McMillan v State Hwy Comm*, 426 Mich 46, 51; 393 NW2d 332 (1986), quoting Prosser & Keeton, n 9 *supra*, § 42, pp 272-274.

plaintiff had established sufficient elements to submit the question to the jury was, in fact, a completely appropriate proximate cause determination. The majority's conclusion that the lower court erred by leaving the proximate causation issue to the jury[32] simply ignores the fact that the trial judge *explicitly* ruled on proximate causation when she determined, in the context of plaintiff's summary disposition motion, that plaintiff had established all of the elements of a prima facie case of appellate malpractice:

> *The Court finds* that Plaintiff has met the *Basic Foods* test[33] *as to causation* and damages as well as the attorney-client relationship and claimed negligent acts, *and thus has established a prima facie case of professional negligence.*[34]

---

[32] *Ante* at 604-605.

[33] *Basic Food Industries v Grant, supra.* The *Basic Food* Court articulated four requirements for a prima facie case of legal malpractice, including the requirement that plaintiff show "that the negligence was the proximate cause of the injury . . . ." *Id.* at 690.

[34] Circuit court opinion and order, authored by Judge Melinda Morris, in response to defendant's motion for summary disposition (emphasis added). In fact, during the trial Judge Morris ruled at least four times on the proximate cause issue—each time finding that plaintiff's complaint was legally sufficient to take the case to a jury.

The majority accurately points out that, in the context of a motion for summary disposition, the trial judge is assigned the task of applying law to fact. I agree. More importantly, I note that this is *precisely* what the trial judge in this case did when ruling on defendant's motion, pursuant to MCR 2.116(C)(8) and (C)(10), for summary disposition.

A summary disposition ruling, however, merely shows that a plaintiff has (or has not) properly pleaded facts sufficient to reach the jury (MCR 2.116[C][10]), or pleaded a valid legal claim (MCR 2.116[C][8]). Notably, the denial of a defendant's motion for summary disposition does not relieve a plaintiff from having to ultimately establish *all* elements of a professional malpractice action. Were this so, we would not need juries.

Therefore, while the majority is accurate in that a trial judge may make a *preliminary* determination—in the context of summary disposition—on the causation issue, this conclusion does not change the fact that plaintiff still must prove, to the jury, all four elements necessary for a professional malpractice action. One of these elements, of course, is proximate causation.

Having properly determined that a prima facie case had been established, it was then within the exclusive province of the jury to determine whether defendant's actions (or inactions) were those particular "causes in fact" that resulted in plaintiff's injury. The majority would apparently abrogate this important distinction between the role of judge, and that of the jury, in an appellate malpractice case.

I also disagree with the majority that the trial judge "ruled that the issue whether the underlying suit would have been successful was one for the jury to determine." *Ante* at 604. Not only does this conclusion ignore the trial judge's express ruling on the prima facie elements of an appellate malpractice case, but in fact all the trial judge said concerning *who* could make causation determinations was that

> the suit within a suit doctrine does not ipso facto call for this finding to be made as a matter of law before trial but *can* be a question for a jury with proper instructions on proximate cause and damages including not only the result of an appeal, but the loss of the value of the opportunity to appeal . . . including the lost opportunity for settlement pending appeal. [Citing *Ignotov v Reiter,* 425 Mich 391; 390 NW2d 614 (1986). Emphasis added.]

I interpret this language as holding that not every "suit within a suit" must be resolved exclusively by the trial judge. The rationale for this conclusion is that some underlying suits will raise issues of fact—such as whether there was a lost opportunity to settle or what sort of actual damages resulted from the failure to appeal—that must be resolved by a jury considering factual evidence. I subscribe to this reasoning and note

that it finds some support, albeit nonbinding, in a prior Court of Appeals decision authored by a member of this Court. Then Judge RILEY's opinion in *Basic Food* explained the general purpose of the "suit within a suit" concept:

> [I]t is at least arguably true that the suit within a suit requirement serves to insure that the damages complained of due to the attorney's negligence are more than mere speculation.[2]
>
> ---
> [2] A general tenet of the law of damages is the rule of certainty. *The rule of certainty requires that proof of damages be based upon factual evidence,* not on mere speculation.

[*Id.* at 693.][35]

In the case at bar, plaintiff's complaint included allegations that, had a proper appeal been taken by defendant, plaintiff would not have been required to pay the damage judgment.[36] This judgment represented the actual "cost" or "damages" to plaintiff arising from defendant's failure to appeal. I agree with the *Basic Food* Court that the "suit within a suit" requirement is aimed, in part, at insuring the certainty of alleged damages. *Coleman, supra* at 64. I further agree with the *Basic Food* Court that proof of damages must be based on *factual evidence,* not mere speculation. *Basic Food, supra* at 693, n 2. This question of "cer-

[35] See also *Coleman, supra* at 64 ("[T]his 'suit within a suit' concept has vitality only in a limited number of situations . . . . This is so because the purpose of the 'suit-within-a-suit requirement is to insure that the damages claimed to result from the attorney's negligence are more than mere speculation' ") (quoting *Charles Reinhart Co v Winiemko,* 196 Mich App 110, 115; 492 NW2d 505 [1992]).

[36] My review of plaintiff's complaint does not suggest that plaintiff alleged damages from a *lost opportunity* to settle pending appeal. Plaintiff's brief filed with this Court, however, does posit a "lost . . . opportunity to negotiate a *favorable* settlement with the [third party]." Further, plaintiff's complaint *did* allege damages from having to *unfavorably* settle a claim with a third party (Kauffman) because defendant had failed to take an appeal.

tainty," however, is an issue of "fact" that must be resolved by a jury. I do not believe, therefore, that the trial judge erred by simply (and accurately) recognizing that some underlying appeals in a case of appellate malpractice will involve issues of fact —decided on factual evidence—that must be resolved by a jury.

IV

Finally, I write to express my disagreement with the majority's conclusion that its reasoning "is overwhelmingly embraced by our sister jurisdictions," and that "at least nineteen jurisdictions directly addressing the issue have found it to be one of law, and no reported decisions have held otherwise." *Ante* at 601. In fact, many of the cases cited in support of this conclusion do not justify the majority holding here. For example, the court in *Phillips v Clancy,* 152 Ariz 415; 733 P2d 300 (Ariz App, 1986), did not hold that an underlying appeal in an appellate malpractice case must be resolved as an "issue of law" by a trial judge exclusively. Rather, the *Phillips* court concluded that such appeals present mixed questions of law and fact and that *the jury* should apply the law to the facts to resolve the underlying appeal and determine causation:

> Therefore, on remand, in the "case within the case," the jury should be instructed on the applicable . . . law and regulations and be asked if, based on the facts presented, but for the alleged negligence, [the plaintiff] would have been entitled to disability benefits. In short, legal issues are to be decided by the judge; factual issues are to be decided by the jury.[37] [*Id.* at 422.]

[37] Cf. *Pickett, Houlon & Berman v Haislip,* 73 Md App 89; 533 A2d 287 (1987) (an attorney malpractice action in which the issue of

Similarly, at least one reported decision from a state supreme court *has* apparently held that the causation issue in an appellate malpractice case demands jury resolution. The Nevada Supreme Court in *Selsnick v Horton,* 96 Nev 944; 620 P2d 1256 (1980), reversed a lower court grant of summary judgment in favor of an attorney defendant and noted:

> Whether [the defendant's] conduct in not pursuing the appeal . . . fell below that of a reasonable attorney *is an issue of fact* which should have been resolved at trial. [*Id.* at 946.]

Clearly, the *Selsnick* majority believed that the question whether defendant's conduct constituted the tort of negligence was an "issue of fact" to be resolved by the jury. This determination necessitates a finding of "causation." *Id.* at 946 (Gunderson, J., concurring in part and dissenting in part).[38] Accordingly, it is also clear that the Nevada Supreme Court decided that the lesser-included issue of "causation" was one properly entrusted to a jury.

Further, I find the following decisions—cited as supportive by the majority—unpersuasive for the reasons indicated: *Chicago Red Top Cab Ass'n, Inc*

causation concerned the result that the trial court would have reached in the underlying trial; the appellate court held that the determination involved issues both of law and of fact and that jury involvement therefore was appropriate).

[38] Admittedly, the majority does not rely on *Selsnick* to support its position. Rather, the concurring and dissenting opinion in *Selsnick* is cited by the majority as indicating that at least one Nevada Supreme Court justice might allow expert testimony regarding the proximate cause issue. *Ante* at 601, n 40. However, the majority also maintains that no reported decisions support entrusting causation determinations to a jury. I believe that this decision, from the Nevada Supreme Court, does just that.

*v Gaines*[39] (summary disposition was awarded on other grounds; the causation issue was never discussed by the court because the plaintiff failed to allege an "injury"); *Jones v Psimos*[40] (the causation question was not an issue; the only relevant language is dicta); *Dings v Callahan*[41] (the causation question was neither an issue nor discussed by the court); *Cabot, Cabot & Forbes Co v Brian, Simon, Peragine, Smith & Redfearn*[42] (the federal court narrowly construed a prior Louisiana Supreme Court decision [*Jenkins*],[43] which held that, in an action for an attorney's failure to file suit, causation and damage questions are up to the jury to decide); *Romano v Weiss*[44] (the causation issue was narrowly addressed; the court did not decide who makes the causation determination where the dispute centers on unsettled law; the malpractice case was not even tried before a jury); *Rinehart v Maiorano*[45] (the causation question was never raised by the parties or addressed by the court); *Goldstein v Kaestner*[46] (the court only discusses the standard of review; the decision says nothing about who determines causation in a malpractice

[39] 49 Ill App 3d 332; 364 NE2d 328 (1977).

[40] 882 F2d 1277 (CA 7, 1989).

[41] 4 Kan App 2d 36; 602 P2d 542 (1979).

[42] 568 F Supp 371 (ED La, 1983).

[43] *Jenkins v St Paul Fire & Marine Ins Co,* 422 So 2d 1109 (La, 1982).

[44] 26 Mass App 162; 524 NE2d 1381 (1988). In fact, while the *Romano* court hypothesized about the issue presented in the instant case:

> [a] sound argument can be made that even if the point is the subject of uncertainty, it should, if a pure question of law, be resolved by the court, not by the finder of fact . . . .

it expressly noted that "[t]he present case [did] not require resolution of that question." *Id.* at 170, n 18. Simply, the *Romano* court expressly disclaimed deciding the issue resolved by this Court today.

[45] 76 Ohio App 3d 413; 602 NE2d 340 (1991).

[46] 243 Va 169; 413 SE2d 347 (1992).

trial); *Better Homes, Inc v Rodgers*[47] (the causation issue was not discussed by the court); *Sutton v Whiteside*[48] (the causation issue was not discussed by the court; in fact, the entire trial court case, including "causation" presumably, was tried before a jury and the reviewing court found no error in this); *Chocktoot v Smith*[49] (the underlying appeal may present mixed questions of law and fact; the judge must decide questions of the law; the jury must decide questions of fact).

In sum, at least twelve of the cases cited as supportive by the majority do not, in fact, directly support the position taken in the case at bar. Indeed, many of these decisions do not even *address* the issue decided by this Court today. Notably, of the remaining eight decisions that arguably support the majority position, only two are from the state's highest court.[50]

I would affirm the decision of the Court of Appeals.

LEVIN, J., concurred with BRICKLEY, J.

[47] 195 F Supp 93 (ND W Va, 1961).

[48] 101 Okla 79; 222 P 974 (1924).

[49] 280 Or 567; 571 P2d 1255 (1977).

[50] The first decision is *General Accident Fire & Life Assurance Corp v Cosgrove Ltd,* 257 Wis 25; 42 NW2d 155 (1950). The Wisconsin Supreme Court simply noted that the sole question to be resolved concerned *damages* and that, in the context of summary disposition, the issue was one of law.

The second, more recent decision, is *Millhouse v Wiesenthal,* n 17 *supra.* Notably, two justices of the Texas Supreme Court dissented from the *Millhouse* decision. Their dissent, although brief, is persuasive.