# STATE OF MICHIGAN

# COURT OF APPEALS

MANVEEN SALUJA, M.D.,

       Plaintiff/Counter Defendant-
Appellant,

v

HONIGMAN MILLER SCHWARTZ AND
COHN LLP,

       Defendant/Counter Plaintiff-
Appellee,

and

LINDA ROSS and ANGELA SPRECHER,

       Defendants/Appellees.

UNPUBLISHED
March 16, 2017

No. 330367
Wayne Circuit Court
LC No. 14-003867-NM

Before: HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

In this legal malpractice case, plaintiff appeals the trial court's order that granted defendants' motion for summary disposition. For the reasons provided below, we affirm.

## I. BASIC FACTS

Plaintiff is a medical doctor who specializes in the field of rheumatology, whose colleague, Dr. G. Krishna Kumar, asked her to advise on medical treatment for Dr. Kumar's mother, Hamsa Vathy, an elderly woman who lived in India. Plaintiff testified that from 2004 to 2010,[1] she wrote prescriptions for fentanyl, a schedule II controlled substance, for Vathy. Plaintiff understood that, while she would write the prescriptions, Dr. Kumar would then fill the prescriptions and carry the drugs to India to give to his mother. Plaintiff estimated that she prescribed approximately 285 patches of fentanyl over that six-year period for Vathy.

---

[1] Vathy died in 2010 at the age of 94.

-1-

On the morning of March 28, 2012, plaintiff's staff called and notified her that DEA agents were at the office to investigate. Plaintiff then called defendant law firm Honigman Miller Schwartz and Cohn LLP (Honigman) and asked to speak to attorney defendant Linda Ross. Plaintiff was informed that Ross was unavailable, and the call concluded. Plaintiff called back and asked to speak with any lawyer. Plaintiff was then routed to speak with attorney defendant Angela Sprecher.

Plaintiff informed Sprecher that DEA agents were present at her office and that she did not know what to do. Upon arrival, plaintiff continued to speak with Sprecher and asked if the DEA agents would speak to her lawyer. After handing the phone over, the agent and Sprecher talked for several minutes, and the agent gave the phone back to plaintiff, where upon Sprecher then told plaintiff to "go ahead with it," meaning to comply with the agents' investigation. At that point, the phone conversation with Sprecher ended.

The DEA agents then requested to see the file pertaining to Vathy. After plaintiff produced the file for the agents, agent Sandra White-Hope allegedly, in an intimidating manner, stated that there was a fine of $5,000 per prescription plus jail time for the offenses. Then, according to plaintiff, agent White-Hope handed plaintiff a form and said, "sign it or you're going to jail." At this point, plaintiff did not call anyone for advice and, instead, simply signed the form. The form was a "voluntary surrender of controlled substances privileges" form where plaintiff voluntarily surrendered her DEA Certificate of Registration.

A few days later, the DEA offered to reinstate plaintiff's controlled substances privileges, except for schedule II and II-N privileges, which would remain restricted for a period of three years. Then, plaintiff and her new team of lawyers, led by Christine Derdarian, were able to negotiate the restricted period down to two years. But plaintiff, not fully satisfied, went over the local DEA office's "head" and contacted the DEA office in Washington, D.C. When the local office learned of this attempt, the two-year offer to plaintiff was withdrawn. Derdarian, however, ultimately was able to convince the local branch to honor the original three-year restriction deal.

Plaintiff filed suit and alleged legal malpractice against all defendants. Plaintiff claimed, *inter alia*, that defendants should have advised her that she was not required to sit for the DEA interview on the morning of March 28, 2012, and that she should not sign a voluntary release of her DEA privileges.

Defendants moved for summary disposition under MCR 2.116(C)(10) and attacked plaintiff's ability to prove the essential element of causation. Simply put, defendants argued that plaintiff cannot show how anything would have been different for plaintiff if she had received purportedly "perfect" advice. Plaintiff responded that causation was "direct and clear." Plaintiff relied on the testimony of attorney Eli Stutsman, who stated that, had defendants acted properly, there was "a good chance" that plaintiff would not have lost her DEA registration. In a reply brief, defendants asserted that plaintiff's position was nothing more than speculation. Indeed, defendants pointed to Dr. Kumar's situation as proof that, had plaintiff not surrendered her DEA registration, she still would have lost her privileges. Defendants noted that Dr. Kumar did not initially surrender his privileges but nonetheless ultimately received a deal similar to what plaintiff received—a restricted license for three years. Defendants also highlighted the testimony

of one of plaintiff's standard-of-care experts, Steven Fishman, who testified that it would have been speculation to opine on whether plaintiff would have received a better deal than the one she received had Sprecher instructed her to not cooperate with the DEA agents.

The trial court granted defendants' motion. The court found that plaintiff failed to offer any evidence to show how any result would have been different had Honigman or Sprecher given different advice. The court noted that Stutsman's testimony was inadequate to show that an outcome would have been different because (1) he admitted that he could not specifically say what the outcome would have been had plaintiff not surrendered her DEA registration on March 28, 2012, and (2) under *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602; 563 NW2d 693 (1997), such expert testimony amounts to speculation and is inadequate to prove how the DEA would have acted had plaintiff not surrendered her registration.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(10), a "court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties" in the light most favorable to the nonmoving party. *Id.* at 120. The motion is properly granted if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011).

## III. ANALYSIS

In order to succeed on a claim of legal malpractice, a plaintiff must prove the following elements:

(1) the existence of an attorney-client relationship;

(2) negligence in the legal representation of the plaintiff;

(3) that the negligence was a proximate cause of an injury; and

(4) the fact and extent of the injury alleged.

[*Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893 (2015) (quotation marks and citation omitted).]

In their motion for summary disposition, defendants claimed that summary disposition was proper because plaintiff was unable to prove the necessary third element of causation.

In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests with the nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If

the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

Thus, in order to prevent defendants' motion from being granted, plaintiff had to offer some evidence to create a question of fact regarding whether the advice that Sprecher provided proximately caused her injuries.

"[L]egal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). Thus, to prove proximate cause in the context of a claim of legal malpractice, "a plaintiff must show that but for the attorney's alleged malpractice, he would have been successful in the underlying suit." *Bowden*, 310 Mich App at 503 (quotation marks and citation omitted). Thus, because there was no "underlying suit," per se, plaintiff had to offer evidence that but for the malpractice, she would have received a better outcome than the one she received from the DEA.

Plaintiff argues that the testimony of Stutsman, through his deposition testimony and later affidavit, is sufficient to create a question of fact on this issue. We disagree.

At his deposition, Stutsman opined that, had Sprecher given competent advice, such as telling plaintiff to reschedule the interview with the DEA agents to another time when she could be ready with an attorney, plaintiff never would have voluntarily surrendered her DEA registration. Stutsman explained that possessing the DEA registration was crucial in his view because the registration represented a bargaining or settlement "chip." And by holding onto that "chip," there was a "good chance"[2] that plaintiff "would have kept her registration intact," compared to her ultimate settlement of a three-year restricted period.

However, immediately after Stutsman stated that he thought plaintiff "could have survived this with her entire registration intact," he admitted, "Now, I don't know that [for sure]." When questioned further on the type of punishment plaintiff ultimately would have received had Sprecher given proper advice, Stutsman stated multiple times that he did not know what the ultimate punishment would have been.

Our Supreme Court has stated that

a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury

---

[2] In his affidavit, Stutsman explained that "good chance" meant "more probably than not and to a legal degree of certainty."

may conclude that more likely than not, but or the defendant's conduct, the plaintiff's injuries would not have occurred. [*Skinner*, 445 Mich at 164-165.]

Importantly, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced," then a plaintiff cannot prevail on her claim as a matter of law. *Id.* at 165 (quotation marks and citation omitted); see also *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586-587; 513 NW2d 773 (1994) ("To hold otherwise would permit a jury to find a defendant liable on the basis of speculation and conjecture.").

We agree with the trial court that Stutsman's testimony was inadequate to prove causation because it was too speculative. First, we note that Stutsman was identified as one of plaintiff's standard of care experts; he was not an expert on DEA decision-making. Second, while he opined at one point that plaintiff would have gotten through this encounter with the DEA with her license fully intact, he also admitted, "I don't know that [for sure]." Third, it is telling that Stutsman was unable to specifically identify what plaintiff's outcome with the DEA would have been had Sprecher given different advice. In sum, Stutsman's mere opinion that the outcome would have been different, *without any supporting evidence*, amounts to nothing more than mere conjecture and speculation and is inadequate for plaintiff to prove this element. The case the trial court primarily relied upon, *Pontiac Sch Dist*, 221 Mich App 602, is instructive.

In *Pontiac Sch Dist*, the plaintiff school district sued the defendant law firm for legal malpractice. The claim was based on the allegation that defendant's conflict of interest caused the school district to suffer damages when it approved a bond structure that was proposed by the defendant that allegedly "involved excessive interest and issuance costs." *Id.* at 611. In support of its claim, the plaintiff relied "upon various strands of testimony," which included testimony from an expert, testimony from the district's superintendent, and testimony from several district board members. However, although the expert testified

> that a reasonably informed board of education would have adopted his alternative bond structure, [the] plaintiff failed to elicit *any testimony from the board members themselves to the effect that they would have adopted such an alternative bond structure* had [the expert] proposed it. [*Id.* at 621 (emphasis added).]

Thus, the Court held that without this direct evidence, it was only "speculation and conjecture that the board would have adopted an alternate bond structure." *Id.* (citation omitted).

Likewise, plaintiff here failed to offer any evidence from the pertinent decision-makers—namely, anyone at the DEA—that explained how their negotiations with plaintiff would have been different had plaintiff not initially voluntarily surrendered her registration. On the contrary, such a belief is belied by comments from DEA investigator Christopher Grush. When plaintiff was later negotiating with the DEA, Grush stated in an email to plaintiff's counsel, "It is unfortunate that your client does not think her actions warrant the loss or restriction of her registration. We think otherwise." Thus, Stutsman's subjective belief that the DEA would have been open to allowing her to be sanctioned without the loss or restriction of her DEA registration is not supported by the record and is, in fact, contradicted by it. Further, we need not look far to

see that the initial surrender of a DEA registration had little effect as a "bargaining chip." That is because the DEA also investigated Dr. Kumar regarding these very same controlled substances being transported to India. And, although Dr. Kumar did not surrender his DEA registration, he nonetheless also received a three-year restricted license.[3] Thus, the two doctors, one with said "bargaining chip" and one without, each received similar three-year restricted license deals.

We reject plaintiff's attempt to limit the applicability of *Pontiac Sch Dist* on the basis that that case involved a "transactional occurrence." That fact is irrelevant to whether a plaintiff in a legal malpractice case has submitted evidence of causation. Aside from *Pontiac Sch Dist*, Our Supreme Court has made it clear that a plaintiff cannot rely on speculation and conjecture when proving this causation element. *Skinner*, 445 Mich at 164-165; *Winiemko*, 444 Mich at 586-587.

Therefore, we hold that because plaintiff failed to offer any "substantial evidence," *Skinner*, 445 Mich at 164-165, showing that plaintiff's outcome with the DEA would have been any different had Sprecher given purportedly correct advice, plaintiff has failed to create a genuine issue of fact on this causation element, see *Quinto*, 451 Mich at 363. Accordingly, the trial court properly granted defendants' motion for summary disposition.

---

[3] Plaintiff's attempt to distinguish plaintiff's situation from that of Dr. Kumar's is unavailing, as both would be responsible for the same offenses under a theories of conspiracy and aiding/abetting.

Further, to the extent that plaintiff asserts that she would have retained her registration in full if the issue were pursued all the way to an administrative law proceeding, that assertion again is based on speculation. 21 USC 824(a) provides that a DEA registration can be revoked or suspended if, among other things, the registrant "committed such acts as would render [her] registration . . . inconsistent with the public interest." Although plaintiff claims that her acts were not inconsistent with the public interest, it is questionable whether an ALJ would have agreed. It is beyond dispute that plaintiff prescribed these drugs while knowing that someone other than the patient was filling the prescriptions and that same person was transporting them to their ultimate destination outside of the country. Although plaintiff states that she did not know this was a violation, we are reminded of the old axiom, "Ignorance of the law is no excuse." *People v Munn*, 198 Mich App 726, 727; 499 NW2d 459 (1993). The fact is that plaintiff engaged in activity that was violative of established rules and regulations. Despite plaintiff's bald claims to the contrary, an ALJ may conclude that such violations are indeed "inconsistent with the public interest," regardless of plaintiff's apparent altruistic intentions. In sum, to posit that plaintiff would have prevailed in full if the matter had gone to an administrative law proceeding is to engage in more speculation.

Affirmed.  Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.


/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Henry William Saad