*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LOUISE RUFO,

       Plaintiff-Appellant,

v

RICKARD, DENNEY, GARNO & LEICHLITER,
doing business as RCN LEGAL, and RON
RICKARD,

       Defendants-Appellees,

and

DENISE A. HIRSCHMANN, PC, and DENISE
HIRSCHMANN,

       Defendants.

UNPUBLISHED
March 10, 2022

No. 356213
Macomb Circuit Court
LC No. 2019-004249-NM

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

In this legal-malpractice case, plaintiff appeals as of right the trial court's opinion and order granting summary disposition in favor of Rickard, Denny, Garno & Leichliter, doing business as RCN Legal, and Ron Rickard.[1] We affirm.

---

[1] Hereinafter, unless necessary to distinguish individually, Rickard, Denney, Garno & Leichliter and Ron Rickard will be referred to as defendants. Because defendants Denise A. Hirschmann, PC, and Denise Hirschmann, were dismissed from this case with prejudice on the basis of a stipulation and are not parties to this appeal, they will only be mentioned when necessary for a proper understanding of the background facts.

## I. FACTUAL BACKGROUND

Plaintiff was married to Steven Rufo (Mr. Rufo) for 37 years, beginning in 1981. Through his employment as executive vice president of Volkswagen Group of America, Mr. Rufo received, among other things, a pension worth approximately $65,000 per year. On May 30, 2017, plaintiff hired defendants as her counsel. On June 12, 2017, plaintiff filed an action for separate maintenance and a motion for a temporary order and ex parte order for custody, support, parenting time, medical insurance, status quo order, exclusive possession of the marital home, and attorney's fees. The parties ultimately agreed to and signed an amended judgment of separate maintenance on December 20, 2017.[2] The separate maintenance judgment included a "Pension Provision":

> IT IS ORDERED that . . . each party is awarded:
>
> 1. Any pension, annuity, or retirement benefits;
>
> 2. Any accumulated contributions in any pension, annuity, or retirement system; and
>
> 3. Any right or contingent right in and to unvested pension, annuity, or retirement benefits that have accrued as a result of the employment of the respective parties.

On February 8, 2018, Mr. Rufo filed for divorce. The parties went to a mediation hearing on July 23, 2018. The parties ultimately agreed to and signed a hand-written settlement agreement, which maintained the above terms regarding the pension. The consent judgment of divorce was entered and signed by the parties on October 30, 2018.

Plaintiff filed a complaint against defendants on October 21, 2019, claiming that defendants "led [her] to believe that she would receive half of the pension in the Judgment of Divorce by failing to advise Plaintiff that she was waiving her right to the pension in the Judgment of Divorce." Defendant moved the trial court for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that plaintiff was aware of the contents of the consent judgment and was therefore judicially estopped from alleging legal malpractice against defendant, and that she could not prove causation. The trial court dispensed with oral argument and granted defendant's motion, relying on plaintiff's failure to present any evidence related to causation. This appeal followed.

---

[2] Plaintiff stated at deposition that she had gone through the judgment of separate maintenance "with a fine-tooth comb."

## II. DISCUSSION

Plaintiff argues the trial court improperly granted summary disposition in favor of defendants because there was a genuine issue of material fact regarding causation.[3] We disagree.

## A. STANDARD OF REVIEW

During the trial court proceedings, the parties presented arguments under both MCR 2.116(C)(8) and (C)(10).[4] Because the trial court did not specifically state under which rule the motion was being decided and relied on evidence outside of the pleadings, this issue is appropriately reviewed under (C)(10). "This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint[.]" *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

---

[3] Defendants contend a number of plaintiff's specific arguments about causation were not raised during the trial court proceedings, and thus, are waived on appeal. While we disagree and believe the issues have been preserved, we also note even if they were not, we would be inclined to overlook any preservation requirements and address the issues because they relate to a question of law, regarding which evidence has been provided by the parties. See *Hartfiel v Eastpointe*, 333 Mich App 438, 453; 960 NW2d 174 (2020) ("[T]his Court may overlook preservation requirements . . . if the issue involves a question of law and the facts necessary for its resolution have been presented.") (quotation marks and citation omitted).

[4] To the extent plaintiff suggests the trial court granted summary disposition in favor of defendants under MCR 2.116(C)(8), the trial court's opinion and order reveals otherwise. Specifically, the trial court summarized and explicitly relied on the parties' exhibits, which included depositions, affidavits, documentary evidence, and transcripts from hearings in the previous cases. When considering a motion for summary disposition under MCR 2.116(C)(8), "a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). Consequently, because the trial court considered evidence outside of the pleadings, any claim that the trial court made its decision under MCR 2.116(C)(8) lacks record support, and thus, is without merit. *Id*.

## B. ANALYSIS

The trial court properly granted summary disposition of the legal-malpractice claims in favor of defendants because there was no genuine issue of material fact regarding causation.

Plaintiff contends the trial court erred when it granted summary disposition in favor of defendants, claiming she presented evidence creating a factual question regarding causation. In other words, plaintiff claims a jury should have decided her legal-malpractice claim. To establish malpractice, a plaintiff bears the burden of creating a genuine issue of material fact as to all of the following elements: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation; (3) the negligence proximately caused the injury; and (4) fact and extent of the injury alleged. *Coleman v Gurwin*, 443 Mich 59, 63; 503 NW2d 435 (1993). The issue of causation has two parts: (1) "causation in fact" and (2) "foreseeability." *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586 & n 13; 513 NW2d 773 (1994). Speculation or conjecture is not enough to hold a defendant causally liable for negligence. *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 613; 563 NW2d 693 (1997). Instead, a plaintiff must present substantial evidence allowing a jury to conclude it was more likely than not the plaintiff's injuries would not have occurred but for the defendant's conduct. *Id*. at 614. "[A] causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994).

One of the areas of dispute in this case relates to the law regarding cause in fact in a legal-malpractice case. This Court has previously stated that to satisfy the element, "a plaintiff must show that *but for* the attorney's alleged malpractice, [the plaintiff] would have been successful in the underlying suit." *Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893 (2015) (quotation marks and citation omitted). "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Charles Reinhart Co*, 444 Mich at 586 (quotation marks and citation omitted). Our Supreme Court noted, however, that "the 'suit within a suit' concept is not universally applicable . . . ." *Id*. In noting the lack of universal application, our Supreme Court cited this Court's opinion in *Basic Food Indus, Inc v Grant*, 107 Mich App 685, 691; 310 NW2d 26 (1981).[5] *Charles Reinhart Co*, 444 Mich at 587. In *Basic Food Indus*, 107 Mich App at 693, the panel noted,

> it would appear that the "suit within a suit" concept has vitality only in a limited number of situations, such as where an attorney's negligence prevents the client from bringing a cause of action (such as where he allows the statute of limitations to run), where the attorney's failure to appear causes judgment to be entered against his client or where the attorney's negligence prevents an appeal from being perfected.

---

[5] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

This Court continued, "[w]e believe that the 'suit within a suit' requirement should, as a matter of sound public policy, be limited to the types of cases we have described above." *Id*. at 694. In other legal-malpractice cases, "the attorney's liability, as in other negligence cases, is for all damages directly and proximately caused by the attorney's negligence." *Id*. As specifically related to the *Basic Food Indus* case, the panel explained that "[i]f the attorney's negligence results in a verdict against his client that is larger than what would have been returned in the absence of his negligence, then the attorney should be held liable for the increased amount of the judgment." *Id*. In *Lowman v Karp*, 190 Mich App 448, 452-453; 476 NW2d 428 (1991), and *Espinoza v Thomas*, 189 Mich App 110, 123; 472 NW2d 16 (1991), this Court opined that causation in a legal-malpractice case could be satisfied by proving an attorney's negligence caused a plaintiff to settle a case for less money than it was actually worth.

The parties engage in significant debate over the proper causation requirement in this specific case. Upon reviewing the caselaw, however, the parties' disagreement bears little relevance to the actual issues in this case. Importantly, regardless of the various terms used for describing causation in legal-malpractice cases, the gravamen of the issues is always the same: did the attorney's negligence cause the client to receive a less favorable result than would have been achieved absent the negligence? If the negligence of an attorney caused a plaintiff to miss a filing deadline for an appeal or a lawsuit, the question of whether those now time-barred appeals or cases would have been successful are necessary to answer the pertinent question. See *Charles Reinhart Co*, 444 Mich at 583-584. If a party suffers a defeat in the underlying suit, and is ordered to pay a significant judgment, the pertinent question can be answered by deciding whether an attorney's negligence caused the judgment amount to be higher than it would have been otherwise. See *Basic Food Indus*, 107 Mich App at 691. If a party settles a case, the pertinent question can be answered by determining whether a better settlement, or a better result during a trial, could have been obtained but for the attorney's negligence. See *Lowman*, 190 Mich App at 452-453; *Espinoza*, 189 Mich App at 123. Thus, despite all the hand-wringing by the parties about the applicable law, the primary issue in this appeal is similar to all negligence cases: whether defendants' alleged breach of their professional duty of care in failing to explain how the consent judgment of divorce distributed the pension resulted in plaintiff receiving a less favorable result than she would have otherwise.

Having determined the appropriate law related to causation in this case, it is important to note that the trial court determined there was no genuine issue of material fact regarding plaintiff's ability to prove cause in fact. Indeed, despite some apparent confusion from the parties, causation in fact was the *only* ground on which the trial court relied in granting summary disposition in favor of defendants. The evidence related to the issue of causation came solely from defendants. Specifically, Rickard testified that the settlement agreement and consent judgment of divorce, which included plaintiff sacrificing her interest in the pension, was reached after lengthy negotiations. In fact, according to Rickard, the pension was the linchpin of Mr. Rufo's stance in the divorce. Rickard testified that Mr. Rufo sought to obtain the sole interest in his pension, and sacrificed certain assets and arguments he otherwise could have raised. For example, Rickard testified that Mr. Rufo agreed to pay plaintiff half of his bonus for five years after the divorce, assented to additional child and spousal support, stated he would continue to contribute to his 401(k) plan, agreed that plaintiff would receive the entire 401(k) plan were he to die before her, and did not challenge plaintiff's request for sole custody of the minor child. Rickard also stated that when the divorce case went to mediation, the mediator informed plaintiff that she was

receiving more benefits than the mediator had seen before in similar litigation. Rickard testified that this was a result of his extensive negotiations related to plaintiff giving up her interest in the pension.

Defendants also provided an affidavit from Mr. Rufo's attorney in the divorce litigation, Jeffery Cojocar. He averred that Mr. Rufo would have insisted on trial if plaintiff had not agreed to give up her interest in Mr. Rufo's pension. In other words, Cojocar averred that the settlement agreement and consent judgment of divorce were contingent upon plaintiff voluntarily sacrificing her interest in the pension.

All of plaintiff's evidence, on the contrary, related to whether defendants breached their professional duty to her. In short, plaintiff testified that she was never informed she was giving up her interest in the pension by signing the consent judgment of divorce, and she did not understand the settlement terms to require her to do so. Plaintiff also presented the affidavit of her expert witness, Jerard Scanland, who stated it was reasonable for plaintiff to misunderstand the terms of the consent judgment of divorce, considering they were ambiguous. And, indeed, a reading of the consent judgment of divorce supports Scanland's description. The language of the consent judgment of divorce is not a model of clarity. The indication that "each party is individually awarded his or her own interest," is ambiguous because it may refer to, or be understood as, a retirement or pension account in an individual's name, or their marital interest in any existing pension or retirement account, regardless of which individual "earned" the benefit. Since this is a long-term marriage, plaintiff unquestionably had an interest in her marital portion of Mr. Rufo's pension. In determining the assets comprising the marital estate, it is recognized that assets earned by a spouse during the marriage, whether received during the existence of the marriage or after the judgment of divorce, are properly considered part of the marital estate. *Byington v Byington*, 224 Mich App 103, 110; 568 NW2d 141 (1997).

Even so, in the context of this litigation, it is unnecessary to determine whether an actual ambiguity in the consent judgment of divorce existed. Indeed, the issue of an ambiguity relates to the question of breach of a professional duty, it is not relevant to the issue of causation. Because this Court must consider the evidence in the light most favorable to plaintiff, it is enough to assume that plaintiff did not actually understand the term, defendants did not explain it to her, and she agreed to settle the divorce because she thought she was maintaining her marital interest in the pension. It is also clear from the record that plaintiff did not actually maintain her marital interest in the pension. Pertinently, if plaintiff believed the consent judgment of divorce could and should be read as awarding her half of the pension, then her remedy would be filing a motion to enforce the consent judgment of divorce with the trial court judge who entered it. Further, if such were the case, then plaintiff's claim of legal malpractice would be completely baseless, considering her interpretation of the consent judgment of divorce awarded her everything to which she believes she was entitled. Instead, by bringing the present action for legal malpractice, plaintiff has operated under the assumption that the consent judgment of divorce disposed of her interest in the pension.

In sum, plaintiff's evidence about her misunderstanding of the terms of the consent judgment of divorce, along with defendants' alleged failure to explain them to her, are entirely irrelevant as related to whether defendants' alleged negligence caused her damages. Instead, defendants' evidence was properly focused on the question of cause in fact, and supported that

even if plaintiff had properly understood the terms of the consent judgment of divorce, she could not have done better by negotiating to keep her interest in the pension or going to trial to ensure it. In particular, testimony from Rickard and the affidavit from Cojocar showed attempts at negotiating a settlement that maintained plaintiff's interest in the pension would not have been successful. Further, testimony from Rickard and indications from the mediator showed that if plaintiff had rejected the settlement and insisted on trial, she would not have achieved a more favorable result during the trial.

In an attempt to rebut this evidence, plaintiff claims that she testified that she understood the consent judgment of divorce as awarding her all of the assets she undisputedly received, as well as her interest in the pension. However, plaintiff's understanding of what the settlement *was* does not impact what the settlement *would have been* if she had properly understood it. Simply put, her belief that she obtained all of the assets and the pension is not probative of whether she actually could have done so if she properly understood the terms of the consent judgment of divorce. Indeed, other than her own conjecture, plaintiff has not presented any evidence that Mr. Rufo would have agreed to a consent judgment of divorce that provided her with an additional asset valued at more than $30,000 per year, without insisting on a change of the other terms in the consent judgment of divorce. *Bennett v Detroit Police Chief*, 274 Mich App 307, 319; 732 NW2d 164 (2006) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact.").

While plaintiff's failure to provide evidence of her ability to negotiate a more favorable settlement that included her interest in the pension is not necessarily fatal to her claim, she also failed to present any evidence that she would have been more successful at trial. As noted above, and as conceded by Rickard in his testimony, plaintiff had an undisputed marital interest in the pension. However, by agreeing to sacrifice that interest, plaintiff obtained assets she otherwise was not necessarily entitled to, including the terms related to the 401(k) plan, Mr. Rufo's bonus, and an unchallenged claim for sole custody of their minor child. Thus, while plaintiff is correct that she would have received her equitable share of the pension in a trial, she has not presented any argument or evidence that the remaining terms of the judgment would have tipped the scales in her favor. For example, plaintiff could have asked Scanland to analyze whether, in his expert opinion, an equitable distribution of the marital assets, taking all things into account after a trial, would have been more favorable than the terms of the consent judgment of divorce. An affidavit providing a specific calculation of such would have been evidence in plaintiff's favor regarding causation. Plaintiff, however, has not provided any such evidence.

As such, the trial court was left only with evidence from defendants regarding causation. That evidence showed that plaintiff could not have achieved a more favorable outcome via a more beneficial settlement or a trial.[6] Plaintiff failed to rebut that evidence with anything other than

---

[6] Plaintiff asserts that the trial court erred by considering Rickard's testimony and Cojocar's affidavit, because both witnesses were unfairly biased. As plaintiff openly admits, though, summary disposition is not an appropriate time for a trial court to address witness credibility. *Skinner*, 445 Mich at 161. By her own reasoning, if the trial court disregarded Rickard's testimony,

conjecture, which is not sufficient to survive summary disposition under MCR 2.116(C)(10). *Bennett*, 274 Mich App at 319.

In an attempt to escape this conclusion, plaintiff contends that the trial court's decision improperly relied on an assessment of credibility of the witnesses. Plaintiff is correct that a trial court cannot weigh the credibility of witnesses in deciding a motion for summary disposition. *Skinner*, 445 Mich at 161. A court "is not permitted to assess credibility, or to determine facts" on a motion for summary disposition. *Id*. "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*. However, none of the trial court's analysis references credibility, and none of the trial court's reasoning purports to weigh one witness's credibility against another. Specifically, the trial court's presentation of Scanland's affidavit merely summarized Scanland's opinion and made no judgments about whether Scanland's statements were credible. It is worth quoting the trial court's language in its entirety:

> Plaintiff also presents an affidavit of attorney Jerard Scanland as an expert witness in this case. Mr. Scanland states that he reviewed the Pension Provision contained in the Amended Judgment of Separate Maintenance and the Consent Judgment of Divorce. He opined that the language is ambiguous and fails to indicate who receives what percentage of the [Volkswagen] pension. He opined that a reasonable client could conclude that the language indicates that the marital portion of the [Volkswagen] pension would be divided equally. He opined that if Defendants did not advise Plaintiff regarding the meaning of the language of the Pension Provision and how it impacted her share of the marital portion of the pension then they have breached the standard of care that an experienced family law attorney owes to his client.

Indeed, the trial court's comparison of Scanland's affidavit to the testimony provided by defendants led it to initially conclude that a question of fact remained regarding whether defendants advised plaintiff that she was waiving her right to the pension. The same is true regarding the trial court's summary of defendants' testimony and evidence. At no point did the trial court weigh the testimony provided by defendants for credibility, or compare their credibility to that of Scanland. The trial court was concerned only with plaintiff's failure to present evidence supporting causation. Plaintiff appears to be equating agreement with defendants on the pivotal issue of causation with making impermissible credibility determinations. This argument is insufficient.

The source of plaintiff's confusion appears to be her belief that Scanland's affidavit and her testimony pertained to the issue of causation, when she and Scanland only addressed whether defendants breached their duty to plaintiff. Specifically, Scanland averred the consent judgment of divorce was ambiguous as related to the pension, and plaintiff could have reasonably understood

---

it also should have disregarded all of her testimony. Further, plaintiff's assertion of bias on behalf of Cojocar appears misplaced, considering his involvement in the case is complete. In other words, Cojocar has no apparent interest in the outcome of this case, considering Mr. Rufo would not be required to pay any money if the trial court determined defendants had committed malpractice. Thus, plaintiff's argument in regard to this evidence is both factually and legally incorrect. *Id*.

it as providing her a share of the pension. Plaintiff, meanwhile, testified that she was never advised by defendants that she was sacrificing her interest in the pension to obtain other benefits. Plaintiff insisted that the terms of the consent judgment of divorce were never adequately explained to her. Scanland averred that there was not an explicit reference to defendants explaining the terms of the consent judgment of divorce to plaintiff. To summarize, all of plaintiff's evidence related to whether defendants breached their duty to plaintiff by failing to properly advise her before she signed the consent judgment of divorce.

Defendants, on the other hand, presented substantial evidence about causation, as summarized above. Plaintiff did not fulfill her burden to present evidence to rebut defendants' proofs, and instead, relied on the evidence related to whether defendants breached their duty of care. The inquiries are entirely separate. The evidence regarding causation, which supported only that plaintiff obtained the best result possible in the litigation, was unrebutted in this case. As a result, the trial court did not address the credibility of witnesses or weigh evidence when it granted summary disposition in favor of defendants. Plaintiff's assertions to the contrary are on the basis of her misunderstanding about the difference between breach of duty and causation. Because the trial court did not address witness credibility, plaintiff's allegation of error lacks merit. *Skinner*, 445 Mich at 161.

Affirmed.[7]

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

[7] Given our decision in this case with respect to causation, defendants' argument to affirm on the alternative ground of judicial estoppel has been rendered moot, *Cassidy v Cassidy*, 318 Mich App 463, 478; 899 NW2d 65 (2017), and we decline to consider it, *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018).